34

656 A.2d 307

## BALTIMORE GAS AND ELECTRIC COMPANY

v.

### Tyrone LANE, a Minor et al.

### No. 51, Sept. Term, 1994.

Court of Appeals of Maryland.

March 28, 1995.

Reconsideration Denied May 8, 1995.

36

Ronald D. Byrd, Stephen J. Rosasco, both on brief, Baltimore, MD, for petitioner.

Charles J. Muskin, Glen Burnie, MD, for respondent.

Before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

MURPHY, Chief Judge.

This case focuses upon tort duty principles associated with injuries sustained by a minor upon using personal property owned by the defendant, but located on premises not owned nor controlled by the defendant.

I

On September 1, 1992, Tyrone Lane, a minor, through his mother, filed a complaint against the Baltimore Gas and Electric Company (BGE), alleging that he was injured as a result of BGE's negligence. Specifically he averred that in June of 1985 employees of BGE were engaged in construction and maintenance activities near a day care center and community laundromat in the Meade Village area of Anne Arundel County; that when BGE employees finished their work, they "carelessly caused to remain unattended, unmarked, and unsecured, a large empty wooden cable spool, weighing nearly 1/2 ton, in an area known by the Defendant to be frequented by children in the community;" that BGE was the owner of the spool; that on June 16, 1985, Lane was a resident of Meade Village and was an invitee on a nearby playground belonging to Meade Village Housing Project, and that he "was engaged in play with other minor children on or about the ... spool, whereupon it was caused to roll over [his] face, head and body" and thereby injure him. The injury, the complaint stated, was caused by BGE's negligence in that it "knew or should have known by the exercise of reasonable care that the ... spool was unreasonably dangerous for ... children ... who might come in contact with it." It was further alleged that BGE was negligent in that it (1) did not remove the spool

when the work was finished; (2) did not post warnings on the spool; (3) did not attempt to restrict access to it by fencing it in, and (4) did not secure it so that it would not roll. The complaint emphasized that BGE knew the spool created a serious risk of injury and knew the area in which the employees left the spool was "frequented by children."

BGE answered, generally denying liability and raising, among others, the defenses of contributory negligence, failure to state a claim, and assumption of risk. BGE later filed a motion for summary judgment on the ground that Lane was a trespasser to the spool and consequently BGE owed him no duty other than to avoid willfully or wantonly injuring him. BGE further maintained that, as matters of law, (1) Lane's injuries were not proximately caused by BGE's alleged negligence; (2) Lane assumed the risk of injury, and (3) Lane was contributorily negligent. In Lane's deposition, which accompanied BGE's motion for summary judgment, he said that employees, whom he believed were from BGE, had been working near the laundromat the week before his injury; that he had seen the spool at the work site; that on Sunday, the day of the accident, he first noticed the spool while it was being pushed by a boy onto the playground where he was playing at the time; that he watched as some boys rode the spool down a hill; and that he, Lane, mounted the spool and attempted to ride it down the hill, but as it accelerated, he got scared and jumped off, after which the spool rolled over him, causing his injuries. He also stated that the spool had some writing on the side, but that he could not remember what it said. In addition, BGE submitted the deposition of Antonio Harold, Lane's cousin, who claimed to have witnessed the injury and the events leading up to it. Harold stated that he saw workers from BGE and from a company called "Riggs and Diggs" working near the laundromat the week before the accident; that the spool had been there for two or three days before the accident; that, on the day of the accident, he saw about five boys moving the spool from its location near the laundromat; that Lane was not one of these boys; that the boys rolled the spool to a hill on a nearby baseball field; that

Lane was present when they rolled the spool down the hill a few times without anyone riding it; that Lane watched as the other boys rode the spool about twelve times cumulatively; that Lane then rode the spool once successfully; and that on his second ride Lane fell off and was injured. The circuit court granted BGE's motion for summary judgment without stating reasons.

Lane appealed to the Court of Special Appeals, which reversed the circuit court in an unreported opinion. It declined to apply the trespasser rule, apparently concluding that the rule applied only to trespassers to real property. The court noted that BGE "decided to leave the spool on property it did not own or occupy without considering whether neighborhood children would be likely to do the very thing they were doing when [Lane] was injured." The court further observed that the spool "was left in front of a day care center and in close proximity to a public playground."

Concerning proximate cause, the court noted the intervening action of the boys moving the spool onto the playground, but said that intervening acts break the chain of proximate causation only when they are unforeseeable. Explaining that foreseeability is a question of fact, the court held: "Reasonable persons could ... conclude that it is foreseeable that children would move the spool to a nearby playground."

The court also stated that it could not hold as a matter of law that Lane was contributorily negligent or that he assumed the risk of injury. We granted certiorari to consider whether the trespasser rule should preclude liability in this case and whether, as a matter of law, BGE's negligence was not a proximate cause of Lane's injury.

## II.

Concerning summary judgment, Maryland Rule 2-501(e) provides: "The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to

judgment as a matter of law." In determining whether a party is entitled to judgment under this rule, the court must view the facts, including all inferences, in the light most favorable to the opposing party. *Beard v. American Agency,* 314 Md. 235, 246, 550 A.2d 677 (1988); *Kramer v. Bally's Park Place,* 311 Md. 387, 389, 535 A.2d 466 (1988); *Liscombe v. Potomac Edison Co.,* 303 Md. 619, 621–22, 495 A.2d 838 (1985). The trial court will not determine any disputed facts, but rather makes a ruling as a matter of law. *Scroggins v. Dahne,* 335 Md. 688, 691, 645 A.2d 1160 (1994); *Southland Corp. v. Griffith,* 332 Md. 704, 712, 633 A.2d 84 (1993); *Beatty v. Trailmaster,* 330 Md. 726, 737, 625 A.2d 1005 (1993). The standard of appellate review, therefore, is whether the trial court was legally correct. *See, e.g., Southland, supra,* 332 Md. at 712, 633 A.2d 84.

### III.

To succeed in a negligence action, the plaintiff must establish the following: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Rosenblatt v. Exxon,* 335 Md. 58, 76, 642 A.2d 180 (1994). This case presents questions of duty and proximate causation.

### A.

BGE argues that Lane was a trespasser to whom it owed no duty other than to refrain from willfully or wantonly injuring him. It asserts that the trespasser analysis applies to personal property as well as to real property, and that Lane trespassed upon BGE's personal property without its permission. BGE further argues that, consistent with our previous cases, we should not recognize any special exception to the

trespasser rule because of Lane's youth.[1]  Lane argues, on the other hand, that this is a simple negligence case to which the trespasser concept does not apply.  That concept applies, Lane contends, only when the defendant is an owner or occupier of land, not personal property.

We have long recognized that a possessor of property owes a certain duty to a person who comes in contact with the property.  *E.g., Wagner v. Doehring*, 315 Md. 97, 101, 553 A.2d 684 (1989).  The extent of this duty depends on the person's status while on the property.  *Id.* at 101, 553 A.2d 684; *Rowley v. City of Baltimore*, 305 Md. 456, 464–65, 505 A.2d 494 (1986).  Maryland law recognizes four classifications: invitee, licensee by invitation, bare licensee, and trespasser. *Wagner, supra,* 315 Md. at 101–02, 553 A.2d 684.  To an invitee—one on the property for a purpose related to the possessor's business—the possessor owes a duty of ordinary care to keep the property safe for the invitee.  *Id.* at 102, 553 A.2d 684.  To a licensee by invitation—essentially a social guest—the possessor owes a duty to exercise reasonable care to warn the guest of dangerous conditions that are known to the possessor but not easily discoverable.  *Id.*  To a bare licensee—one on the property with permission but for his or her own purposes—the possessor owes a duty only to refrain from willfully or wantonly injuring the licensee and from creating " 'new and undisclosed sources of danger without warning the licensee.' "  *Id.* (quoting *Sherman v. Suburban Trust Co.,* 282 Md. 238, 242, 384 A.2d 76 (1978)).  To a trespasser—one on the property without permission—the possessor owes no duty "except to refrain from willfully or wantonly injuring or entrapping the trespasser."  *Id.*

Two points regarding the duty of the possessor of property are often overlooked in this area of the law which is sometimes labelled, too narrowly, "landowner liability" or "premises liability."  First, the property need not be real

---

1.  BGE refers to our express rejection of the so called "attractive nuisance doctrine."  *See, e.g., Murphy v. Baltimore Gas & Elec.,* 290 Md. 186, 195, 428 A.2d 459 (1981).

property. The same principles apply to personal property as to real property. *See, e.g., Murphy, supra,* 290 Md. at 191 n. 3, 428 A.2d 459 (1981) ("Whether the property being used is personalty or realty is of no consequence in the present cases because it is clear that the same common law rule [concerning duty to trespassers] applies to both types of property."); *Restatement (Second) of Torts* § 217, Comment a ("[T]he fact that one person is a trespasser [to a chattel] is important in determining the duty of care owing to him by the possessor of the chattel.").[2] It is possible, therefore, for a person to trespass upon personal property without trespassing on the real property upon which the personal property sits. *See Mondshour v. Moore,* 256 Md. 617, 619–20, 261 A.2d 482 (1970) (assigning trespasser status to a child who stepped up onto a wheel of a transit bus while the bus was sitting at an intersection of public streets); *Grube v. Mayor, etc., of Baltimore,* 132 Md. 355, 103 A. 948 (1918) (holding a boy to be a trespasser to an electric pole and stating "while he had the right to be in the yard he had no right to get upon the pole"); *Stansfield v. C. & P. Tel. Co.,* 123 Md. 120, 91 A. 149 (1914) (holding a man to be a trespasser or a "mere licensee" when he climbed onto a telephone pole located in a public street).

■■■■■■ Second, it is the possession of property, not the ownership, from which the duty flows. In *Rowley, supra,* 305 Md. at 464, 505 A.2d 494, we said:

> "In determining whether the City as owner of the Convention Center owed a duty to invitees, we must consider the threshold question of whether the City was in possession and control of the building. The liability of a landowner for injuries received on the land is dependent upon whether the device which caused the injury is in his possession and control. Section 328[E] of the Restatement defines an owner and occupier of land in terms of a possessor of land...."

---

2. *Restatement (Second) of Torts* is hereinafter cited as *"Restatement."*

*See also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 57, at 386 (5th ed. 1984) ("Largely for historical reasons, the rights and liabilities arising out of the condition of land, and activities conducted upon it, have been concerned chiefly with the *possession* of the land, and this has continued into the present day.") (emphasis added).[3] Possession involves both the present intent to control the object and some ability to control it. *Restatement* §§ 216, 328 E. *See also Rowley, supra,* 305 Md. at 464, 505 A.2d 494 (quoting *Restatement* § 328 E); Oliver Wendell Holmes, Jr., *The Common Law* 238 (stating that a person has possession when "he has the present intent and power to exclude others").

▮▮▮▮▮▮ When an owner loses possession it is relieved of the duties associated with possession. Having lost all its ability to control the property, a former possessor cannot possibly continue to keep the property safe for persons who come in contact with it. The former possessor is not relieved, however, of its duty to exercise reasonable care in the manner in which it gives up possession. It can endeavor to retain control over the property or to relinquish possession in a prudent manner, and it may incur liability, at least, for breaching its duty of reasonable care in these endeavors.

▮▮▮▮▮▮ The former possessor cannot escape this liability by asserting that the plaintiff trespassed on the property which was no longer in its possession. A person cannot trespass to property unless another person has possession of the property.[4] *See Restatement* § 217 ("A trespass to a

---

3. While these authorities write in terms of possession of land, Maryland courts, as we explained above, apply the same rules to personal property as they do to real property.

4. According to § 219 of the *Restatement,* the true owner may still recover under a trespass to chattels theory in the following limited circumstances even when it has lost possession:

"(a) the chattel is impaired as to its condition, quality, or value, or (b) the person entitled to immediate possession is deprived of the use of the chattel for a substantial time, or (c) bodily harm is thereby caused to the person entitled to immediate possession, or harm is caused to some person or thing in which he has a legally protected interest."

chattel may be committed by intentionally (a) *dispossessing* another of the chattel, or (b) using or intermeddling with a chattel in the *possession* of another.") (emphasis added); *Restatement* § 329 (defining trespasser to land as "a person who enters or remains upon land in the *possession* of another without a privilege to do so created by the *possessor's* consent or otherwise") (emphasis added). The ability to claim that another person is a trespasser is part of the right to exclude all others from the property, which is an incidence of possession.[5] *See* Keeton, *supra*, § 58, at 393 ("The possessor of land has a legally protected interest in the exclusiveness of his possession."); *Restatement* § 333, comment b ("The possessor's immunity from liability [to trespassers] is based upon his privilege, as possessor. . . ."). Therefore, if the owner gives up possession, it gives up the right to exclude all others and thereby gives up the benefit of a lessened duty to trespassers.

Accordingly, Lane cannot be a trespasser to the spool if BGE, at the time of the alleged trespass, had given up all physical control over the spool and had indeed lost possession of it (actual and constructive). Viewing the facts in the light most favorable to Lane, the finder of fact could conclude that BGE had lost possession of the spool when some other neighborhood children—not including Lane—took possession of it for recreational purposes (*i.e.*, to ride it down a nearby hill).[6]

---

None of these things happened, however, in this case. Therefore, BGE could not maintain an action against Lane for trespass to chattels.

5. This right is also protected by the criminal laws, the torts of trespass and conversion, and the legally recognized privilege to use reasonable force to defend possession of property.

6. We do not decide in this case whether the neighborhood children who originally took possession of the spool, removing it from its place of rest, would have been considered trespassers if any of them had asserted a claim against BGE. We note, however, that their status may be different from Lane's status, depending on whether BGE, in the eyes of the law, could be considered to be in possession of the spool even after it was left in the neighborhood. We recognize that deeming BGE to have been in possession of the spool until it was moved might generate the somewhat strange result of increasing BGE's exposure to liability based solely on the existence of an intervening event—the

Further, the fact-finder could determine that Lane came in contact with the spool only after the other children took possession of it, moved it to the community playground, and began rolling it down a hill.[7] Based on these findings, the fact-finder could decide that Lane was not a trespasser to the spool. Then, the trier of fact could consider whether BGE, as a former possessor of the spool, breached a duty of care by failing to maintain adequate control over the spool. We hold, therefore, that the circuit court's grant of summary judgment cannot be supported by a conclusion, as a matter of law, that Lane was a trespasser.

Our decision is consistent with cases similar to the instant case, in which the plaintiff was arguably a trespasser to personal property rather than to land. In *Murphy, supra*, 290 Md. at 188–89, 428 A.2d 459, the plaintiff had been bowling and returned to his car parked in the parking lot of the bowling alley. He noticed that his citizen's band radio was missing and approached several teenage children to question them about the radio. As he approached, he heard a noise that sounded like a trash dumpster closing. Thereafter, he

moving of the spool. On the other hand, ruling that BGE lost possession of the spool when the employees left it unattended in the neighborhood might be inconsistent with concept of possession as it is generally applied in other areas of the law. Comment c to § 216 of the *Restatement* states:

"Cases arise in which one who has been in possession of a chattel temporarily relinquishes physical control of it, without abandoning the chattel. In such a case, so long as no other person has obtained possession by acquiring physical control over the chattel with the intention of exercising such control on his own behalf, or on behalf of another, the law protects the property interest by attributing the possession to the original possessor."

7. Because Lane was not a trespasser upon the community playground, we need not decide in this case whether the owner of a chattel who loses possession of it may be relieved of liability because the person injured on the chattel was, at the time of the injury, a trespasser to land owned by a third party. *See Texas Company v. Pecora*, 208 Md. 281, 296, 118 A.2d 377 (1955), (noting but not approving or disapproving a jury instruction that if the jury found the plaintiffs to be trespassing on the land possessed by *one* defendant, the owner of a gas tank left on the property was also to be relieved of liability).

proceeded to the side of the building and lifted the lid off of what he thought was a trash dumpster but was actually an enclosed electric transformer. He could see nothing but darkness inside the unit, so he returned to the bowling alley to wait for the police. Growing impatient, he returned to the unit, and felt around inside with his hand. As he did so, he received a severe electric shock. We held that he was a trespasser to the electric company's property. Evidence showed that the unit had been locked and that sometime within the preceding two weeks, the lock had been broken off by some unknown person. Nevertheless, the plaintiff could not have contended that BGE lost possession of the transformer unit because even though the lock had been removed, the unit remained covered and was permanently affixed to the ground.

In *Mondshour, supra,* 256 Md. at 618–19, 261 A.2d 482, Mondshour and a friend were at a Baltimore City intersection at which a transit bus had stopped. Mondshour stepped up onto the wheel of the bus and tried to reach the bus window. The bus started to move and Mondshour was pulled under the wheel, which crushed his right leg and pelvis. We held him to be a trespasser to the bus, it being apparent that the bus company's agent, the driver, had possession of the bus at the time of the incident.

In *State v. Fidelity Warehouse Co.,* 176 Md. 341, 4 A.2d 739 (1939), a boy drowned when he attempted to use a raft that was moored in public waters along the defendant's property. We held: "The child was a trespasser." *Id.* at 345, 4 A.2d 739. Even though the raft was physically located in public waters, the defendant clearly had maintained possession of the raft. It was moored next to the defendant's property and there was no allegation "that it was carelessly or unlawfully moored." *Id.* at 344, 4 A.2d 739. Furthermore, the only way to reach the raft by land was to jump over a two-foot stone wall and trespass on the defendant's land. *Id.* at 345, 4 A.2d 739.

In *Grube, supra,* 132 Md. at 356–57, 103 A. 948, a young boy climbed an electric pole located in a school yard where chil-

dren regularly played. He fell off the pole and was injured. We held that the boy was a trespasser. We noted that children had been ordered away from the pole and that the spikes used to climb the pole had been removed as far up as a child could reach. We concluded that the defendants had done "everything that could reasonably be expected or required" except moving the pole. *Id.* at 360, 103 A. 948. The implication from our discussion was that the defendants were clearly in possession of the pole, having maintained control over it.

In *Stansfield, supra,* 123 Md. at 122–23, 91 A. 149, a man was injured when he climbed a telephone pole located in a public street. We concluded that he was, at best, a bare licensee. We based our decision, in part, on our conclusion that the poles "were the defendants' property and were necessarily subject to their control in order that their obligations to the public might be performed and that their own interests might be protected." *Id.* at 123, 91 A. 149. In essence, we deemed the defendants to be in possession of the telephone pole.

BGE relies heavily on two cases in which children removed personal property from a defendant's land and were thereafter injured by the property. *See Hicks v. Hitaffer,* 256 Md. 659, 261 A.2d 769 (1970) (boy injured by explosion of .22 caliber blank cartridge); *Kirby v. Hylton,* 51 Md.App. 365, 443 A.2d 640 (1982) (boy fatally injured when 1,850 pound drain pipe rolled over him). Both cases, however, are distinguished from the present case because in each the injured boy was no more than a bare licensee on the land from which he removed the personal property.

BGE also relies on *Hensley v. Henkels & McCoy, Inc.,* 258 Md. 397, 265 A.2d 897 (1970), in which a boy began swinging on a rope that was being used by a contractor at a work site. While the boy was swinging, the contractor began taking up the slack in the rope, and the boy was lifted off the ground. Eventually, the boy could not hold on any longer, fell off, and was injured. We refused to grant the boy any status greater

than a bare licensee. The case, however, is distinguishable from the present case in two important respects. First, the contractor was clearly in possession of the rope at the time the boy came in contact with it. Second, the boy never claimed any status on the land greater than that of a bare licensee.

### B.

BGE argues that the alleged negligence of leaving the spool in a neighborhood cannot be, as a matter of law, the proximate cause of Lane's injury. The chain of causation was broken, BGE argues, by two intervening events: 1) the children moving the spool from its original location to a nearby park, and 2) Lane "riding" the spool down the hill. BGE further characterizes the events that occurred in this case as "completely unforeseeable." Lane argues, on the other hand, that the children's use of the spool in the circumstances was easily foreseeable.

The element of proximate cause is satisfied if the negligence is 1) a cause in fact of the injury and 2) a legally cognizable cause. *See, e.g., Hartford Ins. Co. v. Manor Inn,* 335 Md. 135, 156–57, 642 A.2d 219 (1994). The second of these inquiries is essentially one of fairness and social policy. *Scott v. Watson,* 278 Md. 160, 171, 359 A.2d 548 (1976). We have, nevertheless, established guidelines in determining whether a defendant's actions will be considered a proximate cause of an injury. In some cases, an intervening event itself causes the injury, thereby superseding the original negligence of the defendant and breaking the chain of causation. *Hartford Ins., supra,* 335 Md. at 157, 642 A.2d 219. Not all intervening events, however, are what have become known as superseding causes. We have held that "a defendant guilty of primary negligence remains liable 'if the intervening event is one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable, and the defendant's negligence is an essential link in the chain of causation.'" *Atlantic Mutual v. Kenney,* 323 Md. 116, 129, 591 A.2d 507 (1991) (quoting *State v. Hecht Company,* 165 Md. 415, 421, 169 A. 311

(1933)). In cases involving intervening negligent acts, we have held:

> " 'If the negligent acts of two or more persons, all being culpable and responsible in law for their acts, do not concur in point of time, and the negligence of one only exposes the injured person to risk of injury in case the other should also be negligent, the liability of the person first in fault will depend upon the question whether the negligent act of the other was one which a man of ordinary experience and sagacity, acquainted with all the circumstances, could reasonably anticipate or not. If such a person could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of the intervening negligence of another.' "

*Hartford Ins., supra,* 335 Md. at 160, 642 A.2d 219 (quoting *Kenney, supra,* 323 Md. at 131, 591 A.2d 507).[8] Essentially, the intervening negligence is not a superseding cause if it is reasonably foreseeable. *Kenney, supra,* 323 Md. at 129–32, 591 A.2d 507; *Little v. Woodall,* 244 Md. 620, 626, 224 A.2d 852 (1966); *Penn. Steel Co. v. Wilkinson,* 107 Md. 574, 581–82, 69 A. 412 (1908).

■ This foreseeability inquiry is ordinarily a question of fact to be decided by the finder of fact. In this regard, we have said: "The true rule is that what is proximate cause of an injury is ordinarily a question for the jury. It is only when the facts are undisputed, and are susceptible of but one

---

8. In cases involving intervening crimes or intentional torts, we have applied a two part standard under which the intervening act is not a superseding cause if 1) it was a foreseeable result of the defendant's negligence and 2) a reasonable person would have recognized the enhanced risk created by the defendant's negligence. *Scott, supra,* 278 Md. at 172–73, 359 A.2d 548. Normally, we apply this standard when the third party commits the tort or crime against the plaintiff, not against the defendant or some third party as may have happened in this case when the children moved the spool. *See id.* (applying the standard in wrongful death and survivor's actions where a third party had killed the plaintiff's decedent).

inference, that the question is one of law for the court...."
*Lashley v. Dawson,* 162 Md. 549, 563, 160 A. 738 (1932). *See
also Little, supra,* 244 Md. at 626, 224 A.2d 852; *Texas
Company v. Pecora,* 208 Md. 281, 293–94, 118 A.2d 377 (1955);
*Restatement* § 453.

In light of these cases, the granting of summary judgment
on the proximate cause issue was not appropriate. A reason-
able fact finder could find it foreseeable that, when BGE left
the spool near a residential neighborhood, boys would move it
for the purpose of riding it down a nearby hill. Furthermore,
it could reasonably be foreseeable that another child might
notice this activity and join in it. In sum, we cannot hold that
the intervening acts, which culminated in Lane being injured,
were unforeseeable as a matter of law.

BGE has attempted to analogize the facts before us to those
involved in *Hartford Ins., supra.* In that case, a defendant
was alleged to be negligent in leaving keys in the ignition of a
van, with the doors unlocked. Wewer, the plaintiff's insured,
was injured when a third party stole the van and then
negligently drove it into Wewer's car. We concluded that it
was reasonably foreseeable that a thief would take a van with
keys left in the ignition, but that it was not so clear "that the
thief would drive negligently, and even more unclear that, in
doing so, he or she would injure the plaintiff." *Id.* 335 Md. at
160, 642 A.2d 219. The sequence of events in the present
case, however, was more foreseeable. We think that children
moving a spool left in a neighborhood, and another child riding
it down a hill and getting injured is more probable than a thief
stealing a car, driving negligently and injuring someone. Ac-
cordingly, the matter of foreseeability is one of fact, and not of
law, and is not appropriate for resolution by summary judg-
ment in the circumstances of this case.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS
AFFIRMED, WITH COSTS.*

Judge ELDRIDGE concurs in the result only.

CHASANOW, Judge, concurring.

The Court unanimously reaches the same result reached by the Court of Special Appeals, *i.e.*, that an eight-year-old child, Tyrone Lane, is not, as a matter of law, barred from recovering against Baltimore Gas and Electric Company (BGE) if he proves BGE was negligent and also proves that defenses such as contributory negligence and assumption of the risk are inapplicable. I concur in the result, but I am unable to join or, I confess, to fully understand the legal analysis used by the majority to reach that result.

An owner of land or a possessor of land is not liable for negligently injuring child or adult trespassers to the land. Premises liability is only imposed for willfully or wantonly injuring or entrapping a trespasser. 338 Md. 34, 44, 656 A.2d 307, 312 (1995). We should not extend that well established real property principle to children who are invited onto land, but who may be trespassing on chattels.

The majority holds that all of the real property law principles regarding limitation on liability to trespassers on real property are universally applicable to all trespassers on chattels. Recognizing the unfairness of such a limitation on liability to the plaintiffs in the instant case, the majority fails to critically analyze the applicability of real property trespasser rules to children trespassing on personal property, and instead creates a novel new exception for children who would seem to be trespassers to chattels, but who are not deemed trespassers because someone else trespassed before they did.

The Court holds that BGE can be liable because it failed to foresee 1) that a four hundred pound spool might be turned on its side and rolled away by a group of children, and 2) that the first group of trespassing children who took the spool would negligently leave it on top of a hill where it could be ridden by, and cause injury to, a "nontrespassing" child. The Court states: "A reasonable fact finder could find it foreseeable that, when BGE left the spool near a residential neighborhood, boys would move it for the purpose of riding it down a nearby hill.

Furthermore, it could reasonably be foreseeable that another child [plaintiff] might notice this activity and join in it. In sum, we cannot hold that the intervening acts, which culminated in Lane being injured, were unforeseeable as a matter of law." 338 Md. at 53, 656 A.2d at 316. It seems to me that as BGE argued, it is far less foreseeable that the first trespassers would negligently move the spool to the top of a hill where it could cause injury to the plaintiff than it is foreseeable that a thief, who takes a car with the keys left in the ignition, would drive the car negligently and cause injury. What we said in *Hartford Ins. Co. v. Manor Inn*, 335 Md. 135, 642 A.2d 219 (1994), would seem applicable to the majority's analysis in the instant case. In *Hartford*, we held that the thief's conduct in taking the van with the keys left in the ignition was predictable, but the negligent manner in which he drove the van and its consequences were "highly extraordinary" and not predictable. 335 Md. at 160, 642 A.2d at 232.

The majority apparently holds that Lane, who would seem to be a trespasser on this four hundred pound spool and therefore only entitled to recovery for willful or wanton conduct by BGE, is really not a trespasser because someone else trespassed before he did. The notion that Lane is not a trespasser is apparently based on antiquated, universally discarded distinctions in old common law pleading. Prosser and Keeton note:

> "The original common law rule [for an action in trespass to chattel] required that the plaintiff be in possession of the chattel at the time of the trespass, or the action could not be maintained. This was relaxed slightly, at a later date, to allow trespass to be maintained by one who is entitled to possession immediately, or upon demand...." (Footnotes omitted).

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 14, at 87–88 (5th ed. 1984). Surely after the first group of trespassers abandoned the spool or left it at the top of the hill for Lane to use, BGE was entitled to possession and

did not want Lane using its property.[1] His unauthorized use of this spool with BGE's name embossed on the side would certainly seem to be a trespass, even if he did not realize he was trespassing. *See Bramble v. Thompson,* 264 Md. 518, 287 A.2d 265 (1972), where plaintiffs contended that the limitations on defendant's duty to trespassers should not apply to them because they were inadvertent trespassers. This Court held that even inadvertent trespassers are still considered trespassers. We further stated:

> "To accept appellants' contention would result in a categorization of the trespass doctrine that Maryland does not recognize. This Court has long and studiously avoided distinctions or deviations in the law of trespass in an attempt to achieve consistency and certainty, so people will understand their respective rights and obligations." (Citations omitted).

264 Md. at 522, 287 A.2d at 267–68.

Perhaps the most unusual aspect of the majority's opinion is the apparent implication that the first group of children who used the spool were trespassers, and BGE would not be liable to them for simple negligence, but since Lane was a subsequent user, BGE is liable to Lane for negligence. In holding that the trespasser doctrine is applicable to the first group of trespassers, but is not applicable to Lane, the majority candidly acknowledges that "[w]e recognize that deeming BGE to have been in possession of the spool until it was moved might generate the somewhat strange result of increasing BGE's exposure to liability based solely on the existence of an intervening event—the moving of the spool." 338 Md. at 47 n. 6, 656 A.2d at 313 n. 6.

There are several unresolved problems in the majority's analysis. For example, since BGE is apparently only liable to the first user trespassers if it was guilty of willful and wanton

---

1. The majority seems to conclude that the first group of trespassers had abandoned the spool, rather than assuming that Lane became a joint participant in the initial trespass by joining in the use of the spool together with the initial trespassers.

conduct but is liable to subsequent users like Lane for simple negligence, is BGE's liability to Lane conditioned on its negligent failure to recognize that other children would use the spool after it was used by the first group of trespassing children? The majority seems to recognize that liability is premised on the foreseeability of subsequent users when it states, "it could reasonably be foreseeable that another child [Lane] might notice this activity [by the initial trespassers] and join in it." 338 Md. at 53, 656 A.2d at 316.

In addition, the Court states: "When an owner loses possession it is relieved of the duties associated with possession. Having lost all its ability to control the property, a former possessor cannot possibly continue to keep the property safe for persons who come in contact with it." 338 Md. at 46, 656 A.2d at 313. Yet the Court fails to explain why BGE should be liable since when BGE had possession, the spool was on its base on level ground and not dangerous to children. It was only after BGE lost possession when the spool was turned on its side and rolled by the initial trespassers to the top of a hill that it became dangerous to eight-year-old Lane.

The ramifications of the Court's holding may also prove to be far greater than anticipated. Just by way of example, assume an owner negligently leaves the keys in a car which is negligently maintained. The car is stolen by thief A, who in turn also leaves the keys in the car so that it is then taken by thief B. Thief B is injured because the car has bad brakes. Under the majority holding, thief B has a potential cause of action against the owner because "if the owner gives up possession, it gives up the right to exclude all others and thereby gives up the benefit of a lessened duty to trespassers." 338 Md. at 47, 656 A.2d at 313.

There are better ways to reach the proper result in the instant case which are generally consistent with the holdings, if not the language in all of our prior cases. One possibility is to hold as the Court of Special Appeals held that the limitations on liability to trespassers are applicable only where the plaintiff is a trespasser on real property. In light of the

language in several of our prior cases that the limitations of an owner's liability to trespassers applies to personalty as well as realty, a second, and perhaps preferable, alternative would be to recognize some form of the attractive nuisance doctrine in cases where children are injured trespassing on a chattel which is not on the defendant's real property but is on someone else's real property where the children have a right to be. Although we have consistently rejected the attractive nuisance doctrine in cases of children trespassing on real property, we could, and should, adopt the doctrine at least for children injured by personal property which is left on real property where the children have a right to be.

BGE concedes Lane was probably an invitee on the land since the spool was left in Lane's housing development next to Lane's playground, but they contend "the only issue of any relevance was his status on the spool." I disagree. Where, as in the instant case, both the plaintiff and the defendant have co-equal rights to be on the real property where the defendant leaves a chattel and if the defendant knew, or should have known, that the chattel is unreasonably dangerous to children who are invited on the property, then the defendant should be liable.

Leaving a chattel which could constitute a dangerous but attractive lure to children on the land of another is legally distinguishable from keeping such a chattel on one's own land. In the latter situation, we have rejected the attractive nuisance doctrine based on the traditional rights of owners and occupiers of real property. In the former situation where one places an "attractive nuisance" which is a dangerous magnet for children on someone else's land, there is far greater justification for applying some form of the attractive nuisance exception to the traditional limitations on liability to trespassers. If BGE leaves a spool unattended and unsecured on its own property, even if the area is accessible to children, it should be entitled to greater immunity from liability then when it leaves the spool on *someone else's* property in an area where children are invited. In the instant case, BGE's acts are particularly aggravated because it left this potentially

"attractive nuisance" in front of a day care center and next to a playground where children were certain to be playing.

As to whether there was negligence, in an analogous case the Supreme Court of New Jersey stated:

"Despite the size and weight of the pipes, they could be rolled about by children with relative ease and therefore became potentially dangerous instruments when left unguarded and unsecured in a public playground to be subjected to whatever treatment or use the minds and energies of curious and naturally mischievous youngsters could devise. Under these circumstances, whether the construction company exercised reasonable care was a question that should have been submitted to the jury for its determination."

*Terranella v. Union Building & Construction Co.*, 3 N.J. 443, 70 A.2d 753, 756 (1950).

The eight-year-old plaintiff was neither a trespasser nor a bare licensee on the land where the defendant's spool was located. He was an invitee with at least as much right to be there as the defendant's spool. Where both the child and the chattel have equal rights on the realty, the attractive nuisance doctrine ought to apply, and the Court should fashion an attractive nuisance doctrine applicable only to chattels which would be similar to the Restatement Rule with the following modifications indicated in brackets. 2 *Restatement (Second) Torts* § 339, at 197 (1965) states:

"A possessor of [land a chattel] is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the [land chattel] if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

My suggestion is consistent with the holdings, if not the language, in our prior cases and offers a good explanation for the results in this case and prior cases like *Mondshour v. Moore*, 256 Md. 617, 261 A.2d 482 (1970); *Grube v. Mayor, etc., of Baltimore*, 132 Md. 355, 103 A. 948 (1918); and *Stansfield v. C. & P. Tel. Co.*, 123 Md. 120, 91 A. 149 (1914).

In *Mondshour, supra*, Kerry Mondshour, a six-year-old child, climbed on the rear wheel of a stopped Baltimore Transit Company bus to show a friend a "trick." When the bus started to move, the child was injured. Suit was filed on the child's behalf against Baltimore Transit Company and the bus driver. This Court held the child was a trespasser on the bus wheel and, therefore, not entitled to recover. Although the Court rejected plaintiff's attractive nuisance argument, it seems clear that the rear wheel of a bus momentarily stopped on a public street could not be considered an attractive nuisance where children are likely to trespass. As a matter of law, there is no reason to anticipate that children will trespass on bus wheels while the bus is traveling its route.

In *State v. Fidelity Warehouse Co.*, 176 Md. 341, 4 A.2d 739 (1939), an eleven-year-old child drowned while playing on defendant's raft moored in public waters alongside defendant's property. To get to the raft, the child had to climb a two foot stone wall and trespass across defendant's property. We held there was no liability. In rejecting plaintiff's attractive nuisance argument, we stated:

"In *State v. Longeley*, 161 Md. 563, 566, 158 A. 6, 7, it is said: 'The doctrine of attractive nuisance has never been applied in this state, although this court has had before it [a

number of] appealing cases in which it was strongly urged that the doctrine was applicable. *Grube v. Baltimore*, 132 Md. 355, 103 A. 948, 951; *Baltimore v. De Palma*, 137 Md. 179, 112 A. 277, 279; *State, use of Lease, v. Bealmear*, 149 Md. 10, 130 A. 66. It was said in the *Grube* case, *supra*, that *it might be justly applied in some cases.* But as it was not applied in that case it is safe to say that it would not be applied here under ordinary circumstances.'" (Emphasis added).

*Fidelity*, 176 Md. at 349, 4 A.2d at 742–43. A significant fact in *Fidelity* was that the child had to trespass on defendant's land to get to the raft.

*Grube, supra*, a case cited by the majority may actually support applying the Restatement form of attractive nuisance doctrine where children trespass on the defendant's chattels but not on the defendant's land. In *Grube*, a young boy climbed on an electric pole located in a school yard. He fell off, was injured, and sued the city and the electric company which erected the pole. Prior to the accident, the electric company had removed the lower level spikes used to climb the pole to prevent children from being able to climb the pole. This Court first analyzed the evidence as follows:

> "[T]he uncontradicted fact is that spikes had been removed from the lower part of the pole, so a boy could not reach one from the ground, and everything that could reasonably be expected or required was done, unless it be that the pole was not removed. There was, in our judgment, no obligation on either of the defendants to remove the pole."

*Grube*, 132 Md. at 360, 103 A. at 950. From those facts, we went on to hold:

> "The doctrines of attractive nuisances, implied invitations, etc., *may be justly applied in some cases,* but in this case we can find no just or reasonable ground upon which a recovery can be had." (Emphasis added).

*Grube*, 132 Md. at 361, 103 A. at 951. This Court did not merely hold that the child was a trespasser on the pole, we

carefully analyzed why there was no negligence and why the attractive nuisance doctrine was not applicable.

In *Stansfield, supra,* an adult was injured when he climbed a telephone pole located on a public street. There could be no claim of "attractive nuisance" because the injured plaintiff was an adult. In *Hicks v. Hitaffer,* 256 Md. 659, 261 A.2d 769 (1970), where a boy was injured by the explosion of a .22 caliber blank cartridge taken from a car parked on defendant's property, we noted that plaintiffs did not "advocate the adoption of the attractive nuisance doctrine in any form." 256 Md. at 666–67, 261 A.2d at 772. In addition, the child was a trespasser on the land where the bullets were found.

In *Hensley v. Henkels & McCoy, Inc.,* 258 Md. 397, 265 A.2d 897 (1970), we rejected the attractive nuisance doctrine where a boy swinging on a rope was injured because the boy was a trespasser or licensee on real property owned by one defendant and occupied by the other defendant. We did reject the attractive nuisance doctrine, but noted the child "was not allured, induced, invited, or persuaded by the licensor to enter onto the right of way nor to swing upon the ropes." 258 Md. at 412, 265 A.2d at 905.

Thus, although Maryland has steadfastly rejected any form of the attractive nuisance doctrine where children are trespassers or licensees on the defendant's real property and although there is broad language rejecting the attractive nuisance doctrine in any form, the results in our prior cases are not inconsistent with a limited form of attractive nuisance doctrine where the defendant leaves personal property which could constitute an attractive nuisance on someone else's land where children are invitees on the land. In the instant case, the traditional landowner's liability limitations should not protect BGE because BGE was not the landowner, and the owner of the property, where BGE left its attractive nuisance, invited children on the property. The children had at least as much right on the property as did the BGE spool.

If we adopt my suggestion, then Harper, James, and Gray will at least have to partially modify their apparent criticism that:

> "By 1985 there were only about three states that had adopted neither the attractive nuisance doctrine nor a substitute such as the 'dangerous instrumentality' rule ... nor the Restatement view. Of these states only one, Maryland, had reaffirmed its position in unqualified form in recent years. See *Murphy v. Baltimore Gas and Elec. Co.,* 290 Md. 186, 428 A.2d 459 (1981); *Osterman v. Peters,* 260 Md. 313, 272 A.2d 21 (1971)."

5 Fowler V. Harper et al., *The Law of Torts* § 27.5, at 166 (2d ed. 1986). *See also* 3 J.D. Lee and Barry A. Lindahl, *Modern Tort Law: Liability & Litigation* § 30.01, at 57 (1988) ("Almost all states have adopted the attractive nuisance doctrine.") (footnote omitted).

The overwhelming majority of those states which still cling to the old premises liability theories at least ameliorate the harshness of the doctrines by adopting the attractive nuisance exception for children. Although we are not ready to adopt the attractive nuisance doctrine to child trespassers on a defendant's real property, we should adopt the doctrine for children who are injured while trespassing on a defendant's personal property which is negligently left by the defendant on someone else's land.

The majority and I agree that BGE could be liable if it negligently failed to foresee that a child could be injured by this spool. The majority would permit liability for negligence because it concludes the child did not trespass on the defendant's spool. I believe the child did trespass on the defendant's spool, but would permit liability for negligence under the attractive nuisance doctrine because the child was an invitee on the land where he was injured.

Judge BELL has authorized me to state that he joins in this concurring opinion.