Anne Marie FUNK and Michele
L. Funk, Plaintiffs,

v.

TAUBMAN COMPANY, LTD. and
J.C. Penney Company, Inc.,
Defendants.

Civ. No. H–99–2463.

United States District Court,
D. Maryland.

June 16, 2000.

Francis A. Pommett, III, Baltimore, MD, for plaintiffs.

Judith C. Ensor, Whiteford, Taylor & Preston, Towson, MD, Michael McGowan, Laurel, MD, for defendants.

### MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, Senior District Judge.

In this civil action, plaintiffs Ann Marie Funk ("Ann Marie") and Michele Funk ("Michele"), who are sisters, have filed suit against defendants J.C. Penney Company, Inc. ("J.C.Penney") and Taubman Company, Ltd. ("Taubman"), alleging claims of negligence.[1] Plaintiffs seek damages for personal injuries sustained by them while visiting the Marley Station Mall (the

"Mall"), which is owned and operated by defendant Taubman. This action was originally filed in the Circuit Court for Anne Arundel County and was subsequently removed to this Court pursuant to 28 U.S.C. § 1441(a) on the ground that diversity jurisdiction exists under 28 U.S.C. § 1332(a).

Pursuant to a Scheduling Order entered by the Court, the parties have engaged in discovery. Presently pending before the Court are a motion for summary judgment filed by defendant J.C. Penney and a motion for partial summary judgment filed by defendant Taubman. Memoranda and exhibits in support of and in opposition to both motions have been submitted by the parties. A hearing on the pending motions has been held in open court. For the reasons stated herein, the motion for summary judgment of defendant J.C. Penney will be granted, and the motion for partial summary judgment of defendant Taubman will be denied.

### I

### Facts [2]

On Saturday evening, April 19, 1998, Ann Marie, Michele and Cecilia Castro ("Cecilia"), all white teenagers, (collectively the "young women") went to the Mall to do some shopping. After visiting several stores, the young women went into the American Eagle Outfitters clothing store. As they entered the store, three young females, all African–American teenagers, (collectively the "assailants") were seated in front of the store and started taunting Michele and making comments about her bandaged arm which she had previously injured. The young women did not respond to these comments.

When Michele left the American Eagle clothing store a few minutes later, the assailants again started taunting her. In

---

1. Plaintiffs have filed a four count complaint.

2. The facts and all reasonable inferences drawn therefrom will be viewed in the light most favorable to plaintiffs as the parties opposing the pending motions. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985).

response to these comments, Michele asked the assailants to stop. Michele's request angered the assailants, and they then attempted to provoke Michele into a physical altercation. Upon becoming aware of the escalating nature of Michele's situation, Ann Marie led Michele and Cecilia away from the assailants and later into a store in the Mall owned and operated by defendant J.C. Penney. Nevertheless, the assailants followed the young women around the Mall and into the J.C. Penney store.

Once inside the J.C. Penney store, the young women proceeded to the "Juniors" department in an effort to evade the assailants. However, the assailants followed them. When they reached the "Juniors" department, the assailants became increasingly threatening towards Michele. Ann Marie asked the assailants to stop harassing Michele. However, this request merely served to fuel the assailants' desire to engage in a physical altercation not only with Michele, but with Ann Marie as well.

At this point, Ann Marie requested a J.C. Penney sales associate to call security. Initially, the sales associate did not respond to Ann Marie's request. Eventually, Ann Marie yelled out in a loud voice that she, Michele and Cecilia were going to be attacked and that someone should call security, whereupon the sales associate picked up the phone and contacted J.C. Penney security. When the assailants saw the sales associate pick up the phone, they quickly retreated from the store through the upper level exit, stating to the young women on their way out that they would be "waiting" for them in the parking lot.

A J.C. Penney security guard arrived at the "Juniors" department approximately one minute later, and the young women proceeded to tell him what had transpired. The security guard asked the young women to show him where the assailants had gone. The young women led him out to the upper level balcony of the Mall and pointed out the assailants as they descended the Mall escalator. The young women informed the security guard that they feared that the assailants would make good on their parting threat and would wait outside to attack them. The security guard then suggested that, based upon the retreat of the assailants, the young women should not worry about being attacked. He also advised them that should the assailants attempt to engage them again, they should find a Mall security guard to escort them out of the Mall. The young women were then required to leave the J.C. Penney store because it was closing.

The young women proceeded to walk around the upper level of the Mall because they were afraid to go downstairs where the assailants had gone. In an effort to avoid the assailants, the young women entered a candle store on the upper level of the Mall which was the only store open at the time. After the young women left the candle store, they called their parents to request that they be picked up as soon as possible. After telephoning their parents, the young women continued to walk around the upper level of the Mall, still trying to avoid the assailants. While doing so, the young women ran into two male acquaintances whom they asked to escort them downstairs. The male acquaintances agreed.

Before they had reached the staircase near the Mall common area leading to the lower level, the young women were approached by the assailants. A crowd quickly gathered, and a physical altercation between the young women and the assailants ensued. Mall security guards arrived on the scene shortly after the outbreak of the fight. Upon their arrival, only Michele was being physical assaulted by the assailants. Although Ann Marie had been attacked initially, she had managed to escape from further harm before the Mall security guards arrived. According to the plaintiffs, the Mall security guards watched Michele being attacked by the assailants for approximately one minute before intervening and separating the assailants from Michele.

Both Ann Marie and Michele were injured during the fracas. In this suit, they seek compensatory damages from both defendants for the injuries and other losses sustained by them.

## II

### Plaintiffs' Claims

The complaint contains four counts. In Count I, plaintiff Ann Marie asserts a claim of negligence against defendant Taubman. Plaintiff Ann Marie alleges in Count II that defendant J.C. Penney was also negligent.

In Count III, plaintiff Michele asserts a claim of negligence against defendant Taubman. Count IV presents Michele's claim of negligence against defendant J.C. Penney.

Both plaintiffs allege that, as a result of defendants' negligent actions, they have suffered and will continue to suffer severe physical injuries, economic loss and emotional trauma. Each plaintiff seeks compensatory damages.

## III

### Summary Judgment Principles

It is well established that a party moving for summary judgment or partial summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment or partial summary judgment as a matter of law. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). The movant's burden may be met by consideration of affidavits, exhibits, depositions and other discovery materials. *Id.* The burden is on the moving party at the summary judgment stage to show that there is an absence of evidence to support the non-moving party's position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

While the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party op-

posing the motion, *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985), when the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). " 'A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " *Barwick*, 736 F.2d at 958–59 (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 640 (E.D.N.C.1966), *aff'd*, 388 F.2d 987 (4th Cir.1967), *cert. denied*, 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968)). Moreover, only disputed issues of *material* fact, determined by reference to the applicable substantive law, will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have "an affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (quoting *Catrett*, 477 U.S. at 323–24, 106 S.Ct. 2548).

Applying these principles to the facts of record here, this Court has concluded that the motion for summary judgment of defendant J.C. Penney must be granted and that the motion for partial summary judgment of defendant Taubman must be denied.

## IV

### Applicable Principles of Law

To recover for negligence, each plaintiff here must prove the existence of four elements: a duty owed to her, a breach of that duty, a causal connection between the breach and the injury, and

damages. *Lamb v. Hopkins*, 303 Md. 236, 241, 492 A.2d 1297 (1985). Unless each plaintiff can establish that the defendant owes her a tort duty, there can be no liability in negligence and the defendant is entitled to judgment as a matter of law. *Faya v. Almaraz*, 329 Md. 435, 448, 620 A.2d 327 (1993).

Maryland case law has long recognized that only a possessor of property owes a duty to a person coming in contact with such property. *BG & E v. Lane*, 338 Md. 34, 44, 656 A.2d 307 (1995). It is possession of property, not the ownership, from which this duty flows. *Id.* at 45, 656 A.2d 307. The extent of this duty depends upon the person's status while on the property. *Id.* at 44, 656 A.2d 307. Maryland law recognizes four classifications: invitee, licensee by invitation, bare licensee, and trespasser. *Id.* An invitee is considered someone on the property for a purpose related to the possessor's business. *Id.*

In order to find liability on the part of a business owner for injuries suffered by an invitee while on business property, it must be established: (1) that the owner had actual or constructive knowledge of a condition which created an unreasonable risk of harm to the invitee; (2) that the owner should have anticipated that the invitee would not discover the condition or realize the danger, or would fail to protect herself from the danger; and (3) that the owner failed to take reasonable means to make the premises safe or to give adequate warning of the condition to the invitee. *Lloyd v. Bowles*, 260 Md. 568, 572–73, 273 A.2d 193 (1971).

In general, "there is no duty to control a third person's conduct so as to prevent personal harm to another, unless a 'special relationship' exists either between the actor and the third person or between the actor and the person injured." *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.*, 335 Md. 135, 150, 642 A.2d 219 (1994) (citation omitted). One area where this special relationship has been deemed to exist is between a landlord and individuals on property located in common areas maintained by the landlord. Although a landlord is not the insurer of the safety of parties in its common areas, a landlord may be held liable for injuries caused by the criminal activity of third parties occurring in its common areas. *Scott v. Watson*, 278 Md. 160, 359 A.2d 548 (1976). The landlord may be liable if it is established that the landlord knows or should have known of criminal activity of third parties in the common areas and the landlord has failed to satisfy its duty to take reasonable measures to eliminate conditions contributing to the criminal activity. *Id.* at 169, 359 A.2d 548.

In *Southland Corp. v. Griffith*, 332 Md. 704, 633 A.2d 84 (1993), the Court of Appeals of Maryland held that under certain circumstances, a special relationship exists between a store owner and its invitees implicating the higher duty of care. In *Southland*, a plaintiff sought to recover damages for injuries he received when he was assaulted in the parking lot of a 7–Eleven convenience store. Although the store clerk was informed of the altercation taking place on store premises, he did not telephone the police, even after repeatedly having been requested to summon assistance. The *Southland* court resolved the case by holding, in particular, that:

> an employee of a business has a legal duty to take affirmative action for the aid or protection of a business invitee who is in danger while on the business's premises, provided that the employee has knowledge of the injured invitee and the employee is not in the path of danger.

*Id.* at 719, 633 A.2d 84.

As such, the triggering event for a store employee's duty to aid an imperiled invitee is the employee's knowledge of the injured invitee. *Id.; see also Williams v. Cloverleaf Enterprises, Inc.*, No. 99–1106, 203 F.3d 825, 2000 WL 135108, at *1 (4th Cir. Feb.7, 2000).

# V

## Discussion

### (a)

### Plaintiffs' Claims Against Defendant J.C. Penney

█ Plaintiffs were attacked in the upper level common area of the Mall. Defendant J.C. Penney contends that since it had neither ownership nor possession of the area of the attack, it owed no duty to plaintiffs to protect them from the actions of third-party assailants. In response, plaintiffs argue that their causes of action against defendant J.C. Penney rest on theories of negligence and assert that the J.C. Penney security guard, although aware of threats of physical harm to the plaintiffs, failed to act reasonably and inform Mall security of such threats.

However, the issue of reasonableness becomes material only if, as a matter of law, there is a duty to provide security service in a case involving injury of a business invitee. *See Tucker v. KFC Nat. Management Co.*, 689 F.Supp. 560, 562 (D.Md.1988). If such a duty does not exist, the question of its breach is not presented. *Id.*

On the record here, this Court concludes that defendant J.C. Penney owed no duty to plaintiffs to advise Mall security personnel that the assailants had threatened to subject plaintiffs to physical harm in other areas of the Mall. J.C. Penney neither owned nor possessed the upper level common area of the Mall where the attack on plaintiffs occurred. It therefore had no duty to take steps to protect the plaintiffs in other parts of the Mall. Had the attack occurred in the J.C. Penney store, the result might be different. Since it did not, the law imposes no duty on J.C. Penney to protect plaintiffs from harm by third parties. Whether or not J.C. Penney was

negligent is therefore not material since it had no duty to provide security service to the plaintiffs when they left the J.C. Penney store. In the absence of such a duty, the issue of the reasonableness of a storekeeper's actions does not arise. *Tucker*, 689 F.Supp. at 562.

Plaintiffs' reliance on *Southland* is misplaced. In that case, the plaintiff was actually being assaulted on store premises when he requested but did not receive assistance. The duty recognized by the Court in *Southland* was that arising while a business invitee is in danger "on the business's premises ..." 332 Md. at 719, 633 A.2d 84. The facts here are quite different, inasmuch as the assault on the plaintiffs did not occur on the premises of defendant J.C. Penney.

Accordingly, the motion for summary judgment of defendant J.C. Penney will be granted. Summary judgment in favor of defendant J.C. Penney will be entered as to Counts II and IV of the complaint.

### (b)

### Plaintiffs' Claims Against Defendant Taubman

In support of its motion for partial summary judgment, defendant Taubman argues that it had no actual or constructive notice of the dangerous condition presented by the three assailants until after the fight actually broke out. According to defendant Taubman, it responded quickly to the situation when Mall security guards arrived on the scene within thirty seconds to one minute after the outbreak of the fracas.[3]

█ In their complaint, plaintiffs allege that defendant Taubman was negligent in many different ways. (*See* Plaintiffs' complaint, ¶¶ 4 and 14). It is apparent, however, that two essential claims against de-

---

**3.** Defendant Taubman concedes that it is not entitled to the entry of summary judgment as to all of the claims asserted by plaintiff Michele Funk. Taubman agrees that, under *Southland*, there are disputed questions of

material fact concerning whether its security guards negligently failed to take timely affirmative action to protect Michele from further injury when they arrived on the scene of the physical altercation.

fendant Taubman are presented by the complaint, first, that security guards of Taubman failed to take preventive measures to protect plaintiffs from assault by third parties on their property, and second that security guards of Taubman failed to promptly intervene when they arrived on the scene of the fight. Following its review of the record here, this Court has concluded that the issue as to whether defendant Taubman owed a duty to plaintiffs and failed to take adequate and reasonable steps to protect them from assault in the Mall common areas cannot be determined at this stage of the case as a matter of law.[4]

Viewed in a light favorable to the plaintiffs, the evidence produced by them is sufficient to permit them to present to the jury their claims, of negligence asserted against defendant Taubman. Evidence exists indicating that defendant Taubman had knowledge that assaults and disorderly conduct occurred regularly and with greater frequency on weekend nights in common areas of the Mall. As the Fourth Circuit noted in *Charbonnages deFrance v. Smith*, 597 F.2d 406, 414 (4th Cir.1979), summary judgment is seldom appropriate in a case where, as here, a particular state of mind is decisive as an element of a claim.

Statistical evidence of record establishes that assaults occurred with increased frequency between the hours of 9:00 p.m. and 10:00 p.m. on weekends. At 9:30 p.m., a bell is rung four times inside the Mall, as official notification to patrons that the Mall is closing. At 9:50 p.m., security officers begin asking patrons to leave. The attacks on plaintiffs occurred between 9:45 p.m. and 9:50 p.m. on a Saturday evening.

In his deposition, Ronald Clark, Security Director for the Mall, testified that he knew that fights and assaults at the Mall occurred more often during weekend evening hours. He acknowledged that teenagers formed a large population of Mall patrons on Friday and Saturday nights. He further testified that from year to year, he would evaluate the number of crimes that happened on a Friday or Saturday night and would decide whether he wanted to increase or decrease the security staff. In the 1995–1996 period, he did increase the number of roaming security officers from two to three, but he did not increase his security staff thereafter in spite of the increase of assaults and disorderly conduct incidents in 1997.

A statistical report of the Anne Arundel County Police Department regarding the number of criminal incidents occurring at the Mall discloses that the number of assaults for 1996 was 23, for 1997 was 27 and for 1998 was 18. Disorderly conduct incidents were 51 for 1996, 62 for 1997 and 49 for 1998. Taubman itself keeps statistical information concerning violent crimes that occur at the Mall. Although all such incidents are not reported to Taubman, its records disclose 13 reported assaults for 1996, 24 for 1997 and 12 for 1998.

In spite of this knowledge that, between the hours of 9:00 and 10:00 p.m. on Saturday evenings, a business invitee faced a risk of assault, Taubman had only three roaming security officers available on the evening of Saturday, April 19, 1998 to protect plaintiffs from the physical beatings sustained by them at the hands of the assailants.[5] There were no video cameras installed at locations throughout the Mall on the date of this incident. The Mall is a very large one, containing several levels of

---

4. Since the Court has concluded that both plaintiffs may present to the jury their claims that defendant Taubman failed to take adequate and reasonable steps to protect them from attack by the assailants, it is not necessary to address the question whether Taubman's security guards later failed to timely intervene in the fight.

5. Although Taubman employed five security officers on the date in question, two of them were assigned to fixed posts, leaving three to randomly patrol the entire Mall between 9:00 p.m. and 10:00 p.m. Three police officers were also employed but none of them had the responsibility to patrol areas of the Mall after 9:00 p.m.

common areas. In the absence of sufficient random patrolling, a Mall security officer would have no way to know that a fight had broken out in a common area of the Mall.

This Court is satisfied that a reasonable jury could, on the record here, find that defendant Taubman had knowledge that assaults and disorderly conduct occurred with greater frequency during the 9:00 p.m. to 10:00 p.m. on weekend nights in common areas of the Mall. The Court of Appeals of Maryland has held that a property owner may be found liable for injuries which occur in common areas within the property owner's control where it can be shown that defendant property owner knew or had reason to know the danger existed. *Shields v. Wagman*, 350 Md. 666, 675, 714 A.2d 881 (1998); *Scott*, 278 Md. at 169, 359 A.2d 548. In this particular case, Taubman, a storekeeper possessor of property, voluntarily undertook private police protection for its business invitees. As Judge Niemeyer held in *Tucker*, a negligent undertaking of such protection can result in liability. 689 F.Supp. at 562; *see Scott*, 278 Md. at 171, 359 A.2d 548.

Since evidence exists indicating that Taubman owed plaintiffs a duty to protect them, the question that remains is whether Tabuman breached that duty. On the record here, the Court concludes that it will be for the jury to determine whether Taubman took reasonable and adequate steps to protect plaintiffs from attacks by third parties. Negligence is a relative term and the issue must be decided upon the facts of each particular case. *Fowler v. Smith*, 240 Md. 240, 246, 213 A.2d 549 (1965). It will be for the jury to determine whether Taubman did not exercise ordinary care when it failed to provide a sufficient security force to protect patrons like the plaintiffs from harm resulting from assaultive attacks by third parties during closing hours on a Saturday night. The Court is further satisfied that there is sufficient evidence of record to support plaintiffs' contention that Taubman's negligence was the proximate cause of the injuries sustained by them on Saturday night, April 19, 1998.

Accordingly, plaintiffs may present to the jury their claims of negligence asserted against defendant Taubman. The motion for partial summary judgment of defendant Taubman must therefore be denied.

## VI

### *Conclusion*

In sum, for all the reasons stated, the motion for summary judgment of defendant J.C. Penney will be granted, and the motion for partial summary judgment of defendant Taubman will be denied. Defendant J.C. Penney is entitled to the entry of summary judgment in its favor as to Counts II and IV of the complaint. Both plaintiffs may proceed to trial against defendant Taubman on Counts I and III of the complaint.

Accordingly, it is this _____ day of June, 2000 by the United States District Court for the District of Maryland,

ORDERED:

1.  That the motion for summary judgment of defendant J.C. Penney Company, Inc. is hereby granted;

2.  That judgment in favor of defendant J.C. Penney Company is hereby entered, with costs;

3.  That the motion for partial summary judgment of defendant Taubman Company, Ltd. is hereby denied; and

4.  That both plaintiffs may proceed to trial on their claims asserted against defendant Taubman Company, Ltd. in Counts I and III of the complaint.