675 A.2d 1032

**Octavia BROWN, a Minor, et al.**

v.

**Carel WHEELER, et al.**

**No. 1301, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

May 6, 1996.

Saul E. Kerpelman, Baltimore, for appellants.

Sandra B. Minton (Robert K. Nead and Nead, Hoffman & Karey, on the brief), Baltimore, for appellees.

Argued before BISHOP, HOLLANDER and EYLER, JJ.

EYLER, Judge.

Suit was filed by appellants, Octavia Brown and her mother, Latina Williamson, against appellees, Carel and Luella Wheeler, the owners of a rental dwelling, seeking damages for injuries caused by exposure to lead paint. The questions presented, as paraphrased, are:

1. Did the trial court err in denying appellants' motion to enter upon property owned by the appellees to conduct an inspection to determine the presence of lead paint?

2. Did the trial court err in granting summary judgment in favor of appellees, based on insufficient evidence to show the presence of lead paint in appellees' dwelling and insufficient evidence of injury related to the premises?

We answer the second question in the negative and, consequently, have no need to address the first question.

## I.

The complaint was filed on January 25, 1994, and contained counts asserting negligence, strict liability, and violation of the Consumer Protection Act. Appellants sought compensatory and punitive damages. On April 5, 1994, the trial court granted summary judgment in favor of appellees with respect to the mother's claim for loss of her daughter's services, the claim based on strict liability, and the claim for punitive damages. On June 1, 1995, appellants filed a Motion to Enter Land, seeking inspection of property owned by appellees to determine the presence of lead paint. The motion was denied on June 20, 1995. On June 14, 1995, appellees filed a motion for summary judgment with respect to the remaining claims. That motion was granted on July 13, 1995.

## II.

Octavia Brown was born on September 7, 1983. From January 1985 to January 1987, she lived with her grandmother at 2031 East Oliver Street, a rental dwelling owned by appellees. Brown was diagnosed with an elevated blood lead level on March 13, 1986. Brown's grandmother testified at her deposition that she noticed paint chipping from the front and back doors and in the bedroom, living room, and kitchen window sills at the time Brown resided there. She further testified that she pointed out the condition to appellee, Carel Wheeler, when he collected rent. Appellant, Latina Williamson, testified at her deposition that she saw her daughter put paint chips in her mouth when her daughter was approximately 16 to 17 months old and while residing in the house in question. Appellants had an inspection performed of the exterior of appellees' dwelling in 1995 that revealed the presence of lead on the sash and sill of an exterior cellar window and first floor window and transom. Lead was not detected on the exterior door and door frame. There was no inspection of the interior of the premises to determine the presence of lead.

### III.

Appellants' Motion to Enter Upon Land was based upon an alleged need to prove that appellees' dwelling contained lead-based paint. Appellees, in their response to that motion, asserted that appellees had no prior notice that lead existed on the property and that a current inspection could only show that at some point in history lead paint was or was not applied to the property. Appellees pointed out that the alleged injury occurred over ten years prior to the filing of the Motion and that, since that time, the property had been occupied by other tenants. The plaintiffs' Motion was denied by the trial court on June 20, 1995, but the reason or reasons for the denial are not reflected in the record. On June 14, 1995, appellees filed a Motion for Summary Judgment with respect to the remaining claims, premised on the assertion that (1) there was no evidence that appellees received notice of the existence of lead on the premises in question during plaintiff's tenancy, and (2) that appellees have no liability for injuries that may have been sustained by appellants. In the memorandum in support of the motion, appellees argued that they could not be held liable absent some evidence of knowledge of a hazard and opportunity to correct it. They asserted that there was no evidence that they knew or had reason to know of the existence of lead paint in the dwelling, that it was in a deteriorated condition, or that they knew of the danger of lead poisoning. Appellees submitted an affidavit in support of their Motion for Summary Judgment, which provided as follows:

We are the owners of the property known as 2031 East Oliver Street. We lived with the family on that property in the 1960s. The family moved from 2031 East Oliver Street to a new home address and began to rent the East Oliver Street property to tenants about twenty (20) years ago. It is believed that the property known as 2031 East Oliver Street was rented to Barbara Williamson (Brown's grandmother) from approximately March 1, 1985 to October 1986. During the Williamson tenancy we received no notice from anyone of chipping and peeling paint. Prior to the new tenants moving in, I Carel Wheeler would repair and re-

paint the property as needed. At no time have we ever been notified of the presence of lead on the premises. We are unaware of any inspection of the premises for the existence of lead.

We have only one rental property. We have no other experience with renting and/or managing rental properties. We are unfamiliar with the Baltimore City Code. We have no knowledge of how exposure to lead may effect [sic] children.

Appellants, in their Answer to Appellees' Motion for Summary Judgment, asserted that appellant Latina Williamson and appellant Octavia Brown's grandmother testified that there was chipping and peeling paint at various areas inside of the dwelling and that this condition was pointed out to the defendant Carel Wheeler. Appellants also relied on evidence that an inspection of the exterior of the house in 1995 showed the presence of lead. Appellants requested a continuance of the hearing on the Motion for Summary Judgment in order to allow for a ruling on the plaintiff's Motion to Enter Upon Land and to conduct an inspection for the presence of lead-based paint. As is apparent from the dates set forth previously, the Motion seeking an inspection was denied prior to the hearing on the Motion for Summary Judgment.

Finally, in the response to the Motion for Summary Judgment, appellants asserted that every landlord had reason to know of the dangers of lead paint and the likelihood of its presence in an older home by 1986. Appellants traced the development of knowledge of the hazard presented by exposure to lead-based paint in literature, in newspapers (including the *News American* and the *Baltimore Sun*), and in action taken by the State and Federal governments. In addition to excerpts from the deposition of appellant Latina Williamson, appellant Brown's grandmother, and appellee Carel Wheeler, plaintiffs attached a document entitled, "Lead Poisoning Timeline," identifying publications, governmental actions, and/or events allegedly relevant to the development of knowledge of lead poisoning from 1904 through 1986. Many of the documentary items referred to in that list were attached as exhib-

its. With respect to appellees, appellants pointed out that appellee Carel Wheeler testified at his deposition that he received daily delivery of the *News American* newspaper during the 40's, 50's and 60's. He further testified that, when the *News American* went out of business, he converted his subscription to the *Baltimore Sun.* Finally, he testified that he read the newspaper daily and watched news on television at least once a day. It was appellants' position that, by the time of the alleged exposure in this case, landlords generally had knowledge of the hazards of lead-based paint to children.

The record contains a transcript of the hearing on appellees' Motion for Summary Judgment. The parties argued sufficiency of the evidence relating to the presence of lead paint and the knowledge of appellees. The trial court granted the Motion with respect to the Consumer Protection Act count, on the ground that appellants were not a party to the lease and appellant Brown was not living at the dwelling in question at the beginning of the tenancy and granted the Motion with respect to both the Consumer Protection Act count and the negligence count because "there's been no proof that the cause of injury is lead paint...."

On appeal before this Court, appellants, as they did before the trial court, rely on evidence of the following: that the family noticed chipping and peeling paint and advised appellees; that Brown was seen eating a paint chip a month or two after moving into the premises; that Brown was later tested and found to have an elevated blood-lead level; that an inspection of the premises showed lead paint on the exterior of the premises in 1995; that the use of lead paint has been banned since 1971; and that appellees introduced no evidence indicating that lead-based paint was applied to the house at any time after it was vacated by the appellants. Appellants concede that there is no evidence that appellees had actual knowledge of (1) the presence of lead based paint in the premises in question, (2) the hazard of exposure of children to lead based paint, and (3) its presence in older houses. Appellants rely on the argument that landlords generally had notice

of its presence in older homes and the potential danger to children by the time of the exposure in this case.

Appellees assert that the appeal was taken only on behalf of appellant Brown and not by appellant Williamson; that the appeal was taken only with respect to the judgment entered on the negligence count and not from the judgment entered on the strict liability and Consumer Protection Act counts; and that the appellants' alleged facts are not supported by the record.

## IV.

Summary judgment is proper if "there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2–501(e). "In determining whether a party is entitled to judgment under this rule, the court must view the facts, including all inferences, in the light most favorable to the opposing party." *Baltimore Gas & Electric Co. v. Lane,* 338 Md. 34, 43, 656 A.2d 307 (1995). The trial court determines only issues of law and does not resolve disputed issues of fact. *DeBusk v. Johns Hopkins Hospital,* 105 Md. App. 96, 102, 658 A.2d 1147 (1995) (citations omitted). In reviewing summary judgment, an appellate court determines whether the trial court was legally correct. *DeBusk,* 105 Md.App. at 102, 658 A.2d 1147.

Ordinarily, an appellate court will not sustain the entry of summary judgment on a ground not ruled upon by the trial court if the ground is one as to which the trial court had discretion to deny summary judgment. *Board v. Life & Health Insurance,* 335 Md. 176, 202, 642 A.2d 856 (1994). In the case *sub judice,* it is difficult to discern the basis for the trial court's ruling from its cryptic comment, but it is clear the parties argued lack of knowledge by appellees, as well as the non-existence of lead paint on the premises. In fact, the two are intertwined because, if the ruling was based on lack of evidence of the existence of lead paint, it would necessarily have encompassed lack of knowledge of its existence. In any

event, as discussed below, since evidence of knowledge is necessary to sustain appellants' theories, in the absence of such evidence or an assertion that it could be obtained, the trial court did not have discretion regarding whether to grant summary judgment in favor of appellees.

■ In a lead paint poisoning claim based on negligence, a plaintiff must identify admissible evidence that, if believed, would prove that the landlord (1) had *actual knowledge or reason to know* of chipping, peeling, and flaking lead paint on the premises and that such a condition was hazardous, and (2) the landlord was given a reasonable opportunity to correct the hazard. *Richwind Joint Venture 4 v. Brunson*, 335 Md. 661, 673–676, 645 A.2d 1147 (1994); *Bartholomee v. Casey*, 103 Md.App. 34, 53, 651 A.2d 908 (1994), *cert. denied*, 338 Md. 557, 659 A.2d 1293 (1995). Knowledge of a hazard, therefore, requires general knowledge that deteriorated lead paint is dangerous and specific knowledge that lead-based paint existed on the premises in question and that it was in a deteriorated condition.

■ The Court of Appeals, in *Richwind*, 335 Md. at 676–77, 645 A.2d 1147, discussed the requirement with respect to a landlord's knowledge of a defective and hazardous condition on the premises and stated:

Finally, this Court has distinguished between "reason to know," which is required by § 358 [Restatement (2d) of Torts], and "should know," which is utilized in other sections, in the following manner:

" 'Both the expression "reason to know" and "should know" are used with respect to existent facts. These two phrases, however, differ in that "reason to know" implies no duty of knowledge on the part of the actor whereas "should know" implies that the actor owes another the duty of ascertaining the fact in question. "Reason to know" means that the actor has knowledge of facts from which a reasonable man of ordinary intelligence or one of the superior intelligence of the actor would either infer the existence of the fact in question or would regard its

existence as so highly probable that his conduct would be predicated upon the assumption that the fact did exist. "Should know" indicates that the actor is under a duty to another to use reasonable diligence to ascertain the existence or non-existence of the fact in question and that he would ascertain the existence thereof in the proper performance of that duty.' "

[*State v.* ] *Feldstein,* 207 Md. [20] at 33, 113 A.2d [100] at 106 [(1955)] (quoting *Restatement of Torts* § 12 cmt. a (1934); *Restatement (Second) of Torts* § 12). *See Landlord's Liability for Injury or Death of Tenant's Child from Lead Paint Poisoning,* 19 A.L.R.5th at 418–24.

Knowledge of a condition which involves unreasonable risk of physical harm to persons on the land may not be imputed to a landlord merely from general knowledge that other properties of like age, construction, or design might possibly contain such hazardous conditions. Likewise, a landlord is under no duty to inspect the premises in order to determine whether such conditions exist.

The Court of Appeals, in *Richwind,* at pages 678–79, 645 A.2d 1147, discussed and distinguished *Hayes v. Hambruch,* 841 F.Supp. 706 (D.Md.1994). In doing so, the Court pointed to testimony by the property manager of the dwelling in question to the effect that he was aware that houses built before 1957 often contained lead-based paint and that deteriorated lead-based paint was dangerous to children. The Court concluded:

> A jury could reasonably conclude that, based on the complaint of peeling paint, the age of the building, and Chodak's [building manager's] knowledge of the danger of lead paint in older buildings, Scoken Management (Chodak's employer) knew or had reason to know that lead poisoning was a danger.

Such general knowledge is insufficient to impose liability, however, absent knowledge of a deteriorated condition in the premises in question. The Court stated, at p. 679, 645 A.2d 1147, that

knowledge of the fact that older homes often contained lead-based paint without knowledge that the paint in a particular older home is actually peeling or flaking may be insufficient by itself to hold a landlord liable.

■ In this case, contrary to the position asserted by appellees, there is evidence of notice of chipping and peeling paint on the premises; [1] the issue is whether there is sufficient evidence from which a jury could reasonably infer knowledge or reason to know of the presence of lead-based paint and that it presented a hazard. Appellants sought an inspection of the interior of the premises in the belief that if the results showed the presence of lead-based paint, that would be relevant and permit an inference that lead-based paint was present in the 1985–1987 time period. As stated previously, we do not reach the issue of whether the results of such an inspection would be relevant to that issue under certain circumstances, including the circumstances of this case. The evidence in this case reflects that the dwelling was sufficiently old to be consistent with the presence of lead-based paint. We express no opinion, however, as to the type or amount of evidence necessary to support a reasonable inference that such a dwelling in fact contained lead-based paint based on its age or other circumstantial evidence. In this case, appellants owned one rental property, in which they had resided prior to purchasing another home. There was no evidence in this case that appellees had actual knowledge of the existence of lead paint in this building; that lead frequently exists in older buildings; nor was there any evidence that appellees had actual knowledge of the danger of lead paint or superior knowledge that might constitute "reason to know." Absent some evidence of actual knowledge to show that appellees either knew or had reason to know of the presence and potential hazard of lead-based paint, summary judgment was properly entered in their favor.

1. There was no evidence of actual knowledge of chipping or peeling paint in the dwelling in question by appellee Luella Wheeler. In light of our holding, we need not discuss whether the knowledge of appellee, Carel Wheeler, would be imputed to appellee, Luella Wheeler.

It is very significant that in *Richwind* there was evidence that the building manager knew that older houses often contained lead-based paint and knew the risk that peeling lead-based paint represented to the children of tenants. *Richwind,* 335 Md. at 679, 645 A.2d 1147.

Before ending this discussion, we sound a cautionary note with respect to the limits of this holding. As adopted by the Court of Appeals, the "reason to know" standard does not imply a duty to know, as does the "should know" standard. The "reason to know" standard requires some knowledge—not necessarily actual knowledge of all relevant facts—but enough to cause a person of ordinary intelligence or one of "... 'superior intelligence ... [to] either infer the existence of the fact in question or ... regard its existence as so highly probable that his conduct would be predicated upon the assumption that the fact did exist.'" *Richwind,* 335 Md. at 677, 645 A.2d 1147. If a landlord or property manager has notice of the existence of a specific defect or hazard on particular premises, the requirement to show general knowledge of the danger created by the defect, even if incomplete, may be met by evidence of knowledge generally possessed by persons of ordinary intelligence. Even though there is no duty to acquire knowledge under the "reason to know" standard, under certain circumstances persons may not close their eyes to knowledge generally known and available. For example, if a landlord had sufficient notice of a structural defect in specific premises, such as a hole in a floor, a landlord's denial of knowledge of the hazard presented by that defect to a child who might fall through the hole would not be sufficient to prevent a jury question. Additionally, landlords and property managers frequently may have actual knowledge that is superior to other persons and they, thereby, will be held to have "reason to know" of a hazard which, when combined with knowledge of a defect on particular premises, will create a jury question.

We express no opinion as to the circumstances in which information shown to be generally available or available to landlords and property managers may be sufficient to show

the existence of lead paint in older houses and the hazard presented thereby (assuming evidence of a deteriorated condition in a particular dwelling). We merely hold that when there is no evidence of actual knowledge (1) that lead paint existed on the premises at the time of exposure, (2) that lead paint generally exists in older buildings, and (3) that deteriorated lead paint is a hazard, and there is no showing of superior knowledge by the defendant, such as one in the business of renting or managing properties might be shown to possess, it is insufficient.

With respect to the counts in appellants' complaint alleging strict liability and violation of the Consumer Protection Act, appellants present no argument. In any event, it is implicit in the above discussion that there is no basis for a strict liability claim and there is no evidence in the record of the existence of a deteriorated condition on the premises at the inception of the lease as required by *Richwind,* 335 Md. at 682–686, 645 A.2d 1147.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANTS.