707 A.2d 407

**Clayton BROWN, a minor, etc. et al.**

v.

**Frank DERMER, et al.**

**No. 1009, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Feb. 5, 1998.

Reconsideration Denied Feb. 24, 1998.

Alan J. Mensh (Saul E. Kerpelman, on the brief), Baltimore, for Appellants.

William C. Parler, Jr., (Jennifer S. Cavey and Parler & Wobber, L.L.P., on the brief), Towson, for Appellees.

Argued before EYLER and THIEME, JJ., and
MARSHALL A. LEVIN, Judge (retired), Specially Assigned.

EYLER, Judge.

The minor appellants, Clayton and Crystal Brown, by their mother and next friend, Janet Brown, filed suit against Frank and Harold Dermer t/a HF & S Partnership, appellees, seeking damages for lead paint poisoning based on negligence. On appeal, appellants challenge an order of the Circuit Court for Baltimore City granting appellees' motion for summary judgment. Finding no error, we affirm.

## FACTUAL BACKGROUND

Clayton and Crystal Brown (born 01/22/84), periodically resided at the house located at 4112 Hayward Avenue (the premises).[1] In 1985, the minor appellants were diagnosed with elevated blood-lead levels—Crystal was diagnosed in July and Clayton in September. Both minor appellants required treatment for this condition.

---

1. Janet and Christopher Brown are the parents of appellants. After the parents separated in 1983, Janet Brown, and later the minors, lived at another location. According to medical records, in 1984 and 1985, the minor appellants spent weekends at the premises with their father.

The house located at 4112 Hayward Avenue was approximately seventy-five (75) years old, and there was evidence that, in the time period 1983–85, it contained paint in a deteriorated condition.[2]  Christopher Brown rented the house from appellees, Frank and Harold Dermer,[3] trading as HF & S Partnership.  At the time appellees purchased the house in July, 1981, Mr. Brown was an existing tenant who, in exchange for reduced rent, completed many of the necessary repairs.  Appellees are electricians and plumbers by trade.  They purchased their first rental property in 1968 and owned eight rental properties in 1986.

In 1986, the Baltimore City Health Department (BCHD) issued a violation notice to appellees regarding the presence of deteriorated lead paint on the premises.  The BCHD notice to remove the lead paint was issued on 1/17/86 and expired on 1/23/86.  Appellees completed the necessary repairs by 4/10/86.

## PROCEDURAL HISTORY

On December 1, 1994, appellants filed their initial complaint in the Circuit Court for Baltimore City.  Appellees filed a motion to dismiss, which was granted.  Following a reconsideration hearing on June 7, 1995, appellants were granted leave to amend their complaint.  On June 22, 1995, appellants filed an amended complaint sounding in four counts of negligence.  Appellees filed an answer on July 14, 1995, and the parties then engaged in discovery.  On October 9, 1996, appellees filed a motion for summary judgment.  Appellants responded to the motion for summary judgment on October 25 and, after deposing Frank Dermer, filed a supplemental response on November 15.  Appellees withdrew their motion for summary judgment but, on February 21, 1997, filed another motion for

---

2.  At her deposition on August 7, 1992, Janet Brown testified that there was chipping, peeling, and flaking paint in the living room, kitchen, bedrooms, bathrooms, stairways, and on the exterior of the house.

3.  Harold Dermer is the father of Frank Dermer.

summary judgment. On April 9, 1997, the trial court held a hearing on the motion and, on May 20, 1997, entered an order granting appellees' motion. The basis of the ruling was that there was no evidence from which a jury could infer that appellees had knowledge of the presence of lead paint on the premises prior to service of the 1/17/86 notice upon appellees. This appeal followed.

## QUESTION PRESENTED

Appellants present the following question for our review, slightly rephrased by us for clarity:

Do factual issues exist which demonstrate that appellees knew or had reason to know of hazardous lead paint on the premises prior to appellants sustaining injuries from that condition?

## STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Maryland Rule 2–501(e). "In determining whether a party is entitled to judgment under this rule, the court must view the facts, including all inferences, in the light most favorable to the opposing party." *Brown v. Wheeler*, 109 Md.App. 710, 717, 675 A.2d 1032 (1996) (quoting *Baltimore Gas & Electric Co. v. Lane*, 338 Md. 34, 43, 656 A.2d 307 (1995)). The trial court decides issues of law and does not resolve disputed issues of fact. *DeBusk v. Johns Hopkins Hospital*, 105 Md.App. 96, 102, 658 A.2d 1147 (1995). Upon review of summary judgment matters, an appellate court determines whether the trial court was legally correct. *Id.*

## DISCUSSION

On appeal, appellants contend that the trial court erred in granting appellees' motion for summary judgment. Specifically, they contend that factual issues exist from which a jury could reasonably infer that appellees had knowledge of deteri-

orated lead paint on the premises, and that the condition posed a hazard. Appellees contend that, prior to the BCHD notice, they (1) had no knowledge of the hazard of lead-based paint, (2) were unaware that flaking and chipping paint in older houses could pose a danger to children, (3) had never before received a lead paint violation notice or had a lead paint suit filed against them, and (4) were unaware that the premises at 4112 Hayward Avenue contained lead paint in a deteriorated condition. We agree with the trial court and, consequently, affirm the judgment entered by it.

Generally, a plaintiff in a lead paint poisoning case must present admissible evidence that, if believed by a fact finder, would prove that the landlord (1) had actual knowledge or reason to know of chipping, peeling, or flaking lead paint on the premises, (2) realized or should have realized that such a condition was hazardous, and (3) upon being given a reasonable opportunity to correct the condition, failed to do so. *Richwind Joint Venture 4 v. Brunson,* 335 Md. 661, 673–76, 645 A.2d 1147 (1994); *Bartholomee v. Casey,* 103 Md.App. 34, 53, 651 A.2d 908 (1994). Thus, "[k]nowledge of a hazard ... requires *general* knowledge that deteriorated lead paint is dangerous and *specific* knowledge that lead-based paint existed on the premises in question and that it was in a deteriorated condition." *Brown v. Wheeler,* 109 Md.App. 710, 718, 675 A.2d 1032 (1996) (emphasis added).

As indicated by *Richwind,* section 358 of the Restatement (Second) of Torts is instructive on the issue now before us.[4] In pertinent part, this section provides as follows:

(1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for

4. Section 358 is entitled "Undisclosed Dangerous Conditions Known to Lessor."

physical harm caused by the condition after the lessee has taken possession, if

(a) the lessee does not know or have reason to know of the condition or the risk involved, and

(b) the lessor **knows or has reason to know of the condition, and realizes or should realize the risk involved,** and has reason to expect that the lessee will not discover the condition or realize the risk (emphasis added).

In this case, there is sufficient evidence from which a jury could infer that lead paint existed on the premises in 1984–85—when appellants' exposure to lead occurred. There is evidence that no paint was added to the premises between January, 1984 and January, 1986. The presence of lead paint was confirmed by the BCHD notice in January, 1986, and consequently, a jury could infer that lead paint existed on the premises in 1984–85.

Similarly, there is sufficient evidence from which a jury could infer that deteriorated paint existed on the premises in 1984–85 and that appellees had knowledge or reason to know of that condition prior to January, 1986. Janet Brown testified in her deposition that she complained about the peeling paint to appellees one month prior to giving birth to the minor appellants. In addition, Frank Dermer testified that between 1981 and 1986 he periodically inspected the premises and made any necessary repairs. Frank Dermer also testified that, three to four months before the violation notice was issued, he entered the premises to repair a faucet. Consequently, a jury could infer that appellees knew or had reason to know of the presence of deteriorated paint.

▪ There is no evidence, however, to show that appellees knew or had reason to know that the deteriorated paint contained lead. First, there is no direct evidence that appellees had knowledge of the presence of lead. Appellant must, therefore, rely on circumstantial evidence as the basis from which to infer knowledge or reason to know. The only evidence in that regard is that appellees knew that the building on the premises was approximately 75 years old. This

evidence, standing alone, is insufficient. For this reason, we hold that appellants failed to meet the Restatement test, as adopted by the Court of Appeals in *Richwind,* and affirm the judgment of the trial court.

Appellants rely on evidence [5] that knowledge of the hazard presented by lead paint was so widespread by the 1980s that appellants should be charged with knowledge (1) of the existence of lead paint on the premises and (2) of its potential danger. Appellants point to the "cautionary note" sounded in *Brown,* 109 Md.App. at 721, 675 A.2d 1032 [6] and argue that appellees are sufficiently sophisticated to charge them with such knowledge. Appellants, however, confuse "reason to know" with "should know" and fail to appreciate the limited applicability of the "cautionary note."

According to Restatement (Second) Torts § 358, a plaintiff, in order to prevail, must first meet a "reason to know" test. Under the "reason to know" prong, a plaintiff must set forth facts that establish that the landlord knew or had reason to know that (1) there was deteriorated paint on

---

**5.** Appellants rely on "timeline" information consisting of newspaper articles, local government regulations, case law, and an article on the history of lead paint in the United States.

**6.** In *Brown,* we stated:

Before ending this discussion, we sound a cautionary note with respect to the limits of this holding.... If a landlord or property manager has notice of the existence of a specific defect or hazard on particular premises, the requirement to show general knowledge of the danger created by the defect, even if incomplete, may be met by evidence of knowledge generally possessed by persons of ordinary intelligence. Even though there is no duty to acquire knowledge under the "reason to know" standard, under certain circumstances persons may not close their eyes to knowledge generally known and available. For example, if a landlord had sufficient notice of a structural defect in specific premises, such as a hole in a floor, a landlord's denial of knowledge of the hazard presented by that defect to a child who might fall through the hole would not be sufficient to prevent a jury question. Additionally, landlords and property managers frequently may have actual knowledge that is superior to other persons and they, thereby, will be held to have "reason to know" of a hazard which, when combined with knowledge of a defect on particular premises, will create a jury question.

the suspect premises, and (2) that the deteriorated paint contained lead. Restatement § 358(1)(b) (*"knows* or has *reason to know* of the condition") (emphasis added). The fact that a defendant is a landlord or engages in a certain trade is not enough to meet the reason to know standard absent some evidence that, by virtue of those facts, the defendant has certain knowledge sufficient to support an inference of knowledge of the condition.

Once the "reason to know" hurdle with respect to the condition is met, then a plaintiff must present admissible evidence to show that a defendant realized or should have realized the risks created by the condition. Restatement § 358(1)(b) (*"realizes* or *should realize* the risk") (emphasis added). A plaintiff may not rely on the "should realize" standard, which applies to awareness of the risk inherent in the hazardous condition, until evidence is presented establishing the existence of the hazardous condition and knowledge or reason to know of the condition by the landlord.

In other words, first, a plaintiff must present admissible evidence to permit a jury to infer that a landlord knew or had reason to know (1) that there was deteriorated paint on the premises, and (2) that the deteriorated paint contained lead. The standard is "know" or "reason to know," which, while it requires something less than actual knowledge of the dangerous condition, requires some actual knowledge from which knowledge of the deteriorated lead paint could be inferred (knowledge specific to the premises). Second, assuming that the landlord knew or had reason to know that there was deteriorated lead paint on the premises, a plaintiff must present admissible evidence to show that the landlord realized or should have realized that the condition constituted a risk, *i.e.*, that deteriorated lead paint is hazardous (general knowledge). The evidence of specific knowledge relevant to particular premises and of the general knowledge that lead paint is hazardous may be direct or circumstantial.

In this case, the question of whether there is evidence of knowledge by appellees of the presence of lead paint on the

premises is part of the "condition," and is subject to the know or reason to know standard. There is no evidence from which a jury could infer knowledge that the paint in the house contained lead.[7]

Appellants raise a secondary issue, namely, whether appellees, after receiving the violation notice in January 1986, failed to abate the lead paint hazard within a reasonable time. The notice to remove the lead paint was issued on 1/17/86 and expired on 1/23/86. Appellees completed the necessary repairs by 4/10/86. On appeal, as an alternative argument, appellants claim that the minor appellants were exposed to lead paint on the premises between 1/23/86 and 4/10/86. Thus, appellants' argue, the failure of appellees to abate the hazardous condition within a reasonable time caused the minor appellants to suffer injuries.

There is insufficient evidence in the record to support this allegation. Appellants' reliance on the note made at the Kennedy–Krieger Institute on January 29, 1986, is unfounded. This note merely indicates that the minor appellants were placed in a cab to go to the subject premises at 4112 Hayward Avenue. Indeed, contrary to appellants' assertion, the note indicates that Janet Brown stated that she and the children "remain with her in a one room apartment at 2005 McCullogh Street, 21217." Assuming the admissibility of this note, it is legally insufficient to permit a jury to infer that appellants were exposed to lead paint on the premises between 1/23/86 and 4/10/86.

Subsequent to oral argument but prior to the issuance of this opinion, appellees filed a motion to supplement/correct the record. In that motion, appellees moved (1) to substitute "cleaner" copies of BCHD records for the illegible copies contained in the record extract and (2) to bring to this Court's

---

7. Assuming such evidence were present, we express no opinion as to whether the "timeline" information is admissible and, if it is, whether it would be sufficient to create a jury question as to general knowledge, *i.e.*, whether appellees should have realized that deteriorated lead paint is hazardous.

attention certain pages from the deposition of appellant's mother, Janet Brown. Appellees assert that the deposition testimony confirms that appellants resided at 2005 McCullogh Street after appellees received a violation notice from BCHD and prior to abatement. We deny appellees' motion because a legible copy of the BCHD records is contained in the record and the referenced pages from the deposition transcript were not part of the record below.

For the aforementioned reasons, based on the record below, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**