633 A.2d 84

The SOUTHLAND CORPORATION

v.

David GRIFFITH.

No. 33, Sept. Term, 1993.

Court of Appeals of Maryland.

Nov. 9, 1993.

Reconsideration Denied Dec. 15, 1993.

706

Ronald H. Jarashow (William A. Franch and Robert R. Smith, Franch & Jarashow, P.A., on brief), Annapolis, for petitioner.

Keith R. Siskind (Forman & Steinhardt, P.A., on brief), Glen Burnie, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, and ROBERT M. BELL, JJ.

MURPHY, Chief Judge.

Our grant of certiorari in this case focuses upon the legal duty, if any, of a convenience store clerk to phone the police for emergency assistance when requested to do so on behalf of a business visitor who was being assaulted on the store-owned parking lot adjoining its store.

I

On May 15, 1988, David Griffith, an out of uniform off-duty police officer, his son, and several friends drove in a pickup truck to a 7–Eleven store in Ferndale, which was owned by the Southland Corporation. After purchasing some carryout food, Griffith returned to his vehicle which was parked in Southland's parking lot adjoining its store. As the occupants of the Griffith vehicle were eating the food, another vehicle carrying three teenagers entered the parking lot. These individuals, subsequently identified as Takovich, Palmer, and Haynie, began acting in a rowdy manner; they yelled obscenities at a young female in Griffith's vehicle and thereafter threw a beer can that struck Griffith's son on the shoulder. Officer Griffith left the truck to speak with the teenagers at which time Takovich threw a beer can at him, striking him in the face. Griffith then accosted and struggled with Takovich, identifying himself as a police officer, and informing Takovich

that he was under arrest. Palmer and Haynie then came to Takovich's aid, and Griffith was hit with a tire iron in the face and collar bone.

Griffith directed his son to enter the store and have the clerk call for police assistance; Griffith then fled to a nearby gas station to seek help. The station attendant called the police but was also attacked by one of the teenagers. Thereafter, Griffith was punched and kicked in the gas station by the three teenagers. As a consequence of the altercation, Griffith was seriously injured.[1]

Griffith filed a civil suit for money damages in the Circuit Court for Anne Arundel County against his three assailants for assault and battery and against Southland Corporation for negligence.[2] In his complaint, after reciting the events that resulted in his injuries, Griffith averred that Southland, through its employee, had a legal duty to aid or attempt to aid him while he was being assaulted by the teenagers and also had a duty to exercise reasonable care in protecting him from the assault. Griffith alleged that Southland breached these legal duties, and in particular by refusing to call for police assistance after being requested to do so.

Answering Griffith's complaint, Southland generally denied liability. In answer to interrogatories propounded upon Griffith, the officer stated that his son had asked the clerk in the store to call the police for assistance on three separate occasions in the course of the melee, but that the clerk refused to take such action.

Southland moved for summary judgment; it claimed that it was entitled to judgment as a matter of law because the so-called "fireman's rule," applicable as well to police officers,[3]

---

1. Griffith's three assailants were later apprehended by the police and charged with criminal assault and battery.

2. Default judgments were entered against the three individuals.

3. Although the rule is referred to as the fireman's rule, it also applies to police officers. *See Flowers v. Rock Creek Terrace*, 308 Md. 432, 442 n. 4, 520 A.2d 361 (1987) ("All courts addressing the issue have taken the

precluded recovery in a negligence action against it by a police officer injured by a negligently created risk that was the very reason for the officer's presence on the scene. Southland's summary judgment motion also claimed that, as a matter of law, it had no legal duty to protect Griffith against injury which he sustained in attempting to effectuate the arrest on its parking lot.

Southland's motion was supported by an affidavit of the store clerk who stated that she was completely unaware of any fighting on the store parking lot until a boy, on one occasion only, told her to call the police and say, "Code 13." In her affidavit, the store clerk said that she immediately called the police, as directed.

In opposition to Southland's motion, Griffith maintained that the fireman's rule was inapplicable as it did not apply to an off-duty police officer whose status was that of a volunteer. Accompanying his opposition to the summary judgment motion was Griffith's own affidavit which recited that standard police procedure, which he followed, was to call for police assistance to quell the disorderly conduct of the teenagers; that it took the police ten minutes to arrive after they were called; but had they been contacted when first requested, the response would have been immediate and Griffith's injuries would not have been as severe.

Griffith's fifteen-year-old son, also by affidavit, recounted that following Takovich's arrest, his father faced the 7–Eleven store and yelled, "call the police." The son stated in his affidavit that he then stuck his head through the doorway of the store and told the clerk to contact the police because a police officer needed help. He said that he returned to the store thirty seconds later and again told the clerk to call the police and notify them that it was a Code 13 for ID # A–436 which was his father's ID number.[4] He also stated that the

---

position that the standard of care owed to firemen applies equally to policemen"); *Sherman v. Suburban Trust Co.,* 282 Md. 238, 242, 384 A.2d 76 (1978).

**4.** A Code 13 means that an officer needs assistance.

clerk ignored this request and laughed at him. He said that he returned to the 7–Eleven store a third time, pulled the clerk over to the telephone, dialed 911, and told the clerk to give the operator the address of the store. The son said that approximately two minutes after the 911 call was made, an Anne Arundel County Police Officer arrived on the scene. He concluded his affidavit, stating:

"My initial request to contact the police was made simultaneously with the beginning of the struggle. My second request to contact the police came about thirty seconds after the first request. The third time I entered the store was approximately two or three minutes after the second request to contact the police was made."

Upon this state of the pleadings, the court (Wolff, J.) concluded that Griffith ceased to be "off duty" when he undertook to make the arrest. It determined that the fireman's rule came into play as soon as Griffith announced that he was a police officer and consequently, as a matter of law, there was no liability on the part of Southland for any of the ensuing actions that contributed to Griffith's injuries. The court thus granted summary judgment in Southland's favor.

Griffith appealed. The Court of Special Appeals, by a divided panel, reversed the summary judgment in Southland's favor and remanded the case for further proceedings. *Griffith v. Southland Corp.*, 94 Md.App. 242, 617 A.2d 598 (1992). In its opinion, the court discussed the rationale behind the fireman's rule, namely, that fire fighters and police officers generally cannot recover tort damages against a property owner if injured in the performance of duty by a risk negligently created upon the property. It explained, however, that a police officer or fire fighter is not barred from recovery under the fireman's rule if the negligent actor has an opportunity to but fails to warn the safety officer of a known preexisting hidden danger. Under the circumstances of this case, the court concluded (accepting as true the allegations in Griffith's complaint) that the clerk's refusal to call 911 was "an event in the nature of a hidden danger." *Id.* at 253, 617 A.2d 598. Reasoning that the clerk's refusal to call the police could

not have been anticipated by the officer and was thus an unforeseeable hidden danger, the court found that the fireman's rule did not protect Southland. It held that "when a police officer is in danger during the performance of his or her duties protecting patrons on the premises of a business, and requests, directly or indirectly, that an employee of the business who is not in the path of the danger summon aid via the 911 system, then that employee has a legal obligation to do so promptly." *Id.* at 258–59, 617 A.2d 598.

The court further stated that its holding did not impose a change in existing law; it said that: *"there is no precedent* which permits a bystander to refuse to call 911 when not exposed to imminent danger." *Id.* at 257, 617 A.2d 598 (emphasis in original). Rather, the court said that its opinion merely cultivated and improved an area of Maryland law that had previously been silent.[5] Consequently, the court rejected Southland's argument that, as a matter of law, Griffith could not recover because he was injured during the performance of his duty by a hazard which that duty required him to confront.

## II

Before us, Southland reasserts its view that the fireman's rule bars Griffith from recovering tort damages from it. It also contends that imposition of liability for failure of the clerk to call 911 violates the traditional common law rule that a person has no legal duty to rescue or aid another person who is in peril. Summary judgment in its favor was therefore proper, Southland maintains, and asks that we reinstate that judgment by reversing the Court of Special Appeals.

---

5. The court distinguished the circumstances in this case from the traditional situation where " 'the law has persistently refused to impose on a stranger the moral obligation of common humanity to go to the aid of another human being who is in danger, even if the other is in danger of losing his life.' " *Griffith,* 94 Md.App. at 256, 617 A.2d 598 (quoting W. Page Keeton et. al., *Prosser and Keeton on the Law of Torts* § 56, at 375 (5th ed. 1984)).

■ A trial court may grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Md.Rule 2–501(e). Under this rule, "a trial court determines issues of law; it makes rulings as a matter of law, resolving no disputed issues of fact." *Beatty v. Trailmaster*, 330 Md. 726, 737, 625 A.2d 1005 (1993). In reviewing a disposition by summary judgment, an appellate court resolves all inferences against the party making the motion. *Rosenberg v. Helinski*, 328 Md. 664, 674, 616 A.2d 866 (1992). Because a trial court decides issues of law when granting a summary judgment, the standard of appellate review is whether the trial court was legally correct. *Beatty*, 330 Md. at 737, 625 A.2d 1005; *Rosenberg*, 328 Md. at 674, 616 A.2d 866; *Heat & Power v. Air Products*, 320 Md. 584, 592, 578 A.2d 1202 (1990).

■ To recover for negligence, a plaintiff must prove the existence of four elements: a duty owed to him, a breach of that duty, a causal connection between the breach and the injury, and damages. *Lamb v. Hopkins*, 303 Md. 236, 241, 492 A.2d 1297 (1985); *Scott v. Watson*, 278 Md. 160, 165, 359 A.2d 548 (1976); *Peroti v. Williams*, 258 Md. 663, 669, 267 A.2d 114 (1970). Unless the plaintiff can establish that the defendant owes a tort duty to the plaintiff, there can be no liability in negligence and the defendant is entitled to judgment as a matter of law. *Faya v. Almaraz*, 329 Md. 435, 448, 620 A.2d 327 (1993); *Village of Cross Keys v. U.S. Gypsum*, 315 Md. 741, 751, 556 A.2d 1126 (1989); *Jacques v. First Nat'l Bank*, 307 Md. 527, 532, 515 A.2d 756 (1986); *Ashburn v. Anne Arundel County*, 306 Md. 617, 627, 510 A.2d 1078 (1986); *W. Va. Central R. Co. v. Fuller*, 96 Md. 652, 666, 54 A. 669 (1903).

In *Village of Cross Keys, supra*, we said that "a tort duty 'is . . . an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection,' and that a tort duty is not necessarily coextensive with a moral duty." 315 Md. at 752, 556 A.2d 1126 (quoting in part *Jacques*, 307 Md. at 533–34, 515 A.2d 756 and W. Page Keeton et. al., *Prosser and Keeton on the Law of Torts*, §§ 53,

56, at 357, 375 (5th ed. 1984)). In addition, we explained that among the factors to be considered in determining whether a tort duty should be recognized are

" '[t]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.' "

*Village of Cross Keys*, 315 Md. at 752, 556 A.2d 1126 (quoting *Tarasoff v. Regents of University of California*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 342 (1976)).

It is with these principles in mind that we consider the question of duty in the instant case. For purposes of our analysis, we accept the allegations of Officer Griffith's complaint as true. Thus, we will assume that the 7–Eleven clerk refused to call the police when twice requested by Griffith's son, and did so only on the third occasion after the son dialed 911 and insisted that the clerk ask for assistance and give the store's address.

### III

#### A. The Fireman's Rule

■ Our cases hold that the doctrine known as the fireman's rule generally prevents fire fighters and police officers injured in the course of their duties from recovering tort damages from those whose negligence exposed them to the risk of injury. *See Flowers v. Rock Creek Terrace*, 308 Md. 432, 520 A.2d 361 (1987); *Sherman v. Suburban Trust Co.*, 282 Md. 238, 384 A.2d 76 (1978); *Aravanis v. Eisenberg*, 237 Md. 242, 206 A.2d 148 (1965); *Steinwedel v. Hilbert*, 149 Md. 121, 131 A. 44 (1925). Prior to 1987, the rationale behind the fireman's rule focused on the status of the safety officer on the landowner's premises. We generally held that fire fighters

and police officers were licensees when they entered property in the performance of their duties; and consequently the landowner owed them no duty of reasonable care.

In *Flowers*, a 1987 case involving the proper application of the fireman's rule, we departed from traditional principles of landowner's or premises liability in cases involving fire fighters or police officers, i.e., whether their status was that of a licensee or invitee. As to these individuals, we said, 308 Md. at 447–48, 520 A.2d 361, that the fireman's rule was "best explained by public policy"; that it is the nature of the safety officer's occupation that limits the officer's ability to recover in tort for work-related injuries. We explained in *Flowers, id.* at 447–48, 520 A.2d 361:

"Instead of continuing to use a rationale based on the law of premises liability, we hold that, as a matter of public policy, firemen and police officers generally cannot recover for injuries attributable to the negligence that requires their assistance. This public policy is based on a relationship between firemen and policemen and the public that calls on these safety officers specifically to confront certain hazards on behalf of the public. A fireman or police officer may not recover if injured by the negligently created risk that was the very reason for his presence on the scene in his occupational capacity. Someone who negligently creates the need for a public safety officer will not be liable to a fireman or policeman for injuries caused by this negligence."

 The fireman's rule does not, as we said in *Flowers, id.* at 448, 520 A.2d 361, bar fire fighters from recovering tort damages for all improper conduct. There, we said that under our cases, "[n]egligent acts not protected by the fireman's rule may include failure to warn the firemen of pre-existing hidden dangers where there was knowledge of the danger and an opportunity to warn." *Id.* We further noted that negligent acts not protected by the rule may also include "acts which occur subsequent to the safety officer's arrival on the scene and which are outside of his anticipated occupational hazards." *Id.* Citing *Aravanis v. Eisenberg*, 237 Md. 242, 206 A.2d 148

(1965), we reiterated in *Flowers* that the fireman's rule does not apply when a public safety officer sustains injuries after the initial period of his anticipated occupational risk, or from perils not reasonably foreseeable as part of that risk; in such situations, a fire fighter or police officer is owed a duty of due care. In this regard, it is evident that if the act of negligence that causes the injury is something other than what necessitated the presence of the safety officer, then the fireman's rule does not apply. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 61, at 431 (5th ed. 1984) ("the ` fireman's rule has been held only to apply when the firefighter or police officer is injured from the very danger, created by the defendant's act of negligence, that required his professional assistance and presence at the scene in the first place, and the rule will not shield a defendant from liability for independent acts of misconduct which otherwise cause the injury").

We cannot agree with the Court of Special Appeals that the clerk's failure to call 911 was an event in the nature of a hidden danger or an unanticipated risk rendering the fireman's rule inapplicable.[6] The danger incurred by Officer Griffith in attempting to make an arrest was not hidden; indeed, police officers are trained to confront these situations and are necessarily aware of the danger associated with arresting disorderly individuals. Neither is refusal to summon assistance for a police officer in distress an unanticipated or unforeseeable occupational risk.

The fireman's rule is not applicable, however, for other reasons. The alleged negligence—refusal to call the police to assist Griffith when timely requested—was not what necessitated his presence on Southland's premises. Originally, he entered the store as a customer for the sole purpose of purchasing food. He was at that time, under our cases, a "business invitee" to whom the store owner owed a duty to use reasonable and ordinary care to keep the premises safe and to

---

6. The cases generally indicate that hidden dangers are typically physical conditions on the premises, such as property defects or the storage of hazardous chemicals.

protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety, will not discover. *See Sherman v. Suburban Trust Co., supra,* 282 Md. at 242, 384 A.2d 76, and cases there cited. That Southland's premises included its parking lot, upon which the assault occurred, does not lessen the extent of the duty owed by it to Griffith. *See Scott v. Watson, supra,* 278 Md. at 163–66, 359 A.2d 548. As we see it, the only issue in the case is whether, under the circumstances, Southland had a legal duty to Griffith to come to his aid in a time of peril by promptly calling for police assistance when requested.

## B. Duty to Aid

 Absent statutes to the contrary, or the existence of a legally cognizable special relationship, the law is clear that a person has no legal duty to come to the aid of another in distress, even if the aid can be provided at no risk or cost to the other person. *See Lamb v. Hopkins, supra,* 303 Md. at 242, 492 A.2d 1297; Keeton et al., *supra,* § 56, at 375; Harper et al., *3 The Law of Torts* § 18.6, at 718–19 (2nd ed. 1986); *Restatement (Second) of Torts* § 314 (1965). Thus, "[t]he fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." *Restatement, supra,* § 314.[7]

---

7. Comment c of § 314 states:

"The rule stated in this Section is applicable irrespective of the gravity of the danger to which the other is subjected and the insignificance of the trouble, effort, or expense of giving him aid or protection.

"The origin of the rule lay in the early common law distinction between action and inaction, or 'misfeasance' and 'non-feasance.' In the early law one who injured another by a positive affirmative act was held liable without any great regard even for his fault. But the courts were far too much occupied with the more flagrant forms of misbehavior to be greatly concerned with one who merely did nothing, even though another might suffer serious harm because of his omission to act. Hence liability for non-feasance was slow to receive any recognition in the law. It appeared first in, and is still largely confined to, situations in which there was some special relation

Courts in some jurisdictions have created a number of narrowly drawn "special relationship" exceptions to this general common law rule which give rise to a duty to render aid; they include, *inter alia,* common carrier to passenger, innkeeper to guest, and shopkeeper to business visitor. *See* Keeton et al., *supra,* § 56, at 376–77.

The only potential relevant exception to the general rule in the case before us is the shopkeeper-business visitor relationship. Although no Maryland case has ever applied this exception, the authorities have stated that a shopkeeper owes a legal duty to render aid to an invitee when the shopkeeper knows that the invitee is ill or injured on the business premises. *See* Keeton et al., *supra,* § 61, at 426 (A landowner must act reasonably to render aid or other care when he knows or should know that the invitee is ill or injured); Harper et al., *supra,* § 18.6, at 722–23 ("One who invites others on his premises has been held bound to take reasonable steps to rescue them from perils that his negligence played no part in creating"); *Restatement, supra,* § 314A (Possessor of land owes a duty to its invitees to render aid after the landholder knows or has reason to know that they are ill or injured).

Decisions from other jurisdictions also follow the rule that a storekeeper owes a legal duty to aid its business invitees. In *Drew v. LeJay's Sportsmen's Cafe, Inc.,* 806 P.2d 301 (Wyo. 1991), the Supreme Court of Wyoming held that a restaurant has a duty to summon medical assistance in a reasonable time for a choking victim, but has no duty to provide first aid to the victim. In particular, the court found that the following jury instruction issued by the trial court was proper.

"A restaurant whose employees are reasonably on notice that a customer is in distress and in need of emergency medical attention has a legal duty to come to the assistance of that customer. However, a restaurant does not have a duty to provide medical training to its food service personnel, or medical rescue services to its customers who become

between the parties, on the basis of which the defendant was found to have a duty to take action for the aid or protection of the plaintiff."

ill or injured through no act or [sic] omission of the restaurant or its employees. A restaurant in these circumstances meets its legal duty to a customer in distress when it summons medical assistance within a reasonable time."
*Drew,* 806 P.2d at 304.

Similar facts to the instant case existed in *Jones v. Kwik Karol and Ginalco, Inc.,* 490 So.2d 664 (La.Ct.App.1986). In that case, the plaintiff was outside of a convenience store/gas station pumping gas into his car. Two men began verbally harassing the plaintiff as he filled his tank and continued to torment him as he walked toward the store for a receipt.

Sensing trouble, a female customer asked the attendant to call the police. Approximately four minutes later, one of the two men struck the plaintiff and a struggle ensued where the two men battered the plaintiff. One witness stated that the store attendant simply stood inside the store and watched the fight. The attendant claimed that he called his supervisor after the fight began and that his supervisor advised him to call the police. The fight was over, however, before he called the police. The trial court found that the defendant store owner did not breach its duty to reduce the risk of harm to the plaintiff.

The Louisiana intermediate appellate court reversed the trial court and concluded that the store's employee breached its duty to exercise reasonable care for the protection and safety of its patrons. Also finding that this breach was a proximate cause of plaintiff's injuries, the court said:

"[The attendant] knew that the two white men were acting suspiciously (trying to steal gas) before [plaintiff] walked into the store. [The attendant] acknowledged that a white female told him to call the police three to five minutes before the altercation began. Even though he could clearly see that a patron was being beaten, [the attendant] did not call police until after he telephoned his supervisor and apparently after [plaintiff] asked him to do so.

"[The attendant] could have easily reduced or removed the risk of harm to plaintiff by calling the police when

requested to do so, first by [plaintiff] and then by others before the fight began. He could have stepped outside to better see and hear what was going on. He could have told the men he was going to call the police or ordered them to depart. Instead, he dismissed every request to call the police and neglected to take any action until the fight was almost over."

*Jones,* 490 So.2d at 666.

■ It is evident from the decisions in other jurisdictions and from the various authorities that a shopkeeper has a legal duty to come to the assistance of an endangered business visitor if there is no risk of harm to the proprietor or its employees. In this regard, we adopt § 314A of the *Restatement,* and in particular embrace the proposition that an employee of a business has a legal duty to take affirmative action for the aid or protection of a business invitee who is in danger while on the business's premises, provided that the employee has knowledge of the injured invitee and the employee is not in the path of danger.[8]

■ It is clear that, under the allegations of his complaint, taken as true, Griffith enjoyed the status of a business visitor when he entered the store and purchased food. The fact that

---

**8.** The comments to § 314A of the Restatement further clarify the rule: Comment d states that "[t]he duty to give aid to one who is ill or injured extends to cases where the illness or injury is due to natural causes, to pure accident, to the acts of third persons, or to the negligence of the plaintiff himself...." Comment f states that "[t]he defendant is not required to take any action until he knows or has reason to know that the plaintiff is endangered, or is ill or injured.... In the case of an ill or injured person, he will seldom be required to do more than give such first aid as he reasonably can, and take reasonable steps to turn the sick man over to a physician, or to those who will look after him and see that medical assistance is obtained."

In addition, Illustration 5 of § 314A cites a relevant example: "A, a patron attending a play in B's theater, suffers a heart attack during the performance, and is disabled and unable to move. He asks that a doctor be called. B's employees do nothing to obtain medical assistance, or to remove A to a place where it can be obtained. As a result, A's illness is aggravated in a manner which reasonable prompt medical attention would have avoided. B is subject to liability to A for aggravation of his illness."

he was an off-duty police officer did not alter that status, and he remained a business invitee while he sat in the truck on the store's parking lot and consumed the food. Nor did he cease to be a business visitor when, in responding to the attack upon him and his son, he confronted and attempted to arrest his assailants in the course of the fight.

Because Officer Griffith was a business visitor, Southland, through its employee, owed him a legal duty to aid (call the police) when he requested assistance. Clearly, a material factual dispute exists as to whether the employee called the police when requested to do so. As earlier noted, the employee maintains that she immediately made the call; Griffith's son, in his affidavit, averred that she twice refused to summon assistance and only on the third occasion after the son dialed 911 did she assist by giving the operator the store's address.

We therefore conclude that the entry of summary judgment in favor of Southland was inappropriate in this case because, under the facts alleged by Griffith, we cannot say, as a matter of law, that the store clerk had no legal duty to phone for emergency assistance.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED FOR THE REASONS STATED HEREIN; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS IN THE COURT OF SPECIAL APPEALS AND IN THIS COURT TO BE PAID BY THE APPELLANT.