694 A.2d 123

Salima Louise Siler MARRIOTT,

v.

Harry A. COLE, et al.

Salima Louise Siler MARRIOTT,

v.

MORGAN STATE UNIVERSITY.

Nos. 1161, 1193, Sept. Term, 1996.

Court of Special Appeals of Maryland.

May 2, 1997.

Reconsideration Denied June 25, 1997.

494

C. William Clark (Nolan, Plumhoff & Williams, Chartered, on the brief), Towson, for appellant.

Mark J. Davis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellees.

Argued before EYLER, THIEME and SONNER, JJ.

EYLER, Judge.

The issue presented by this case is whether the denial of tenure by appellees, Harry A. Cole, et al., constituting the Board of Regents for Morgan State University (Board of Regents or Board) and Morgan State University (MSU), to appellant, Salima Louise Siler Marriott, a faculty member, violated appellant's contractual or constitutional rights.

## Facts

Appellant was hired by MSU as an instructor on July 1, 1972, to teach several courses, including mental health. At that time, MSU was under the jurisdiction of the Board of Trustees of the State Colleges. Appellant and MSU executed a "faculty member's contract" for a term beginning July 1, 1972 and ending June 30, 1973. In September 1970, the Board of Trustees had adopted Regulations and Procedures Governing Academic Freedom and Tenure (Regulations) in the State Colleges. The 1970 Regulations provided that a faculty member who attained tenure could only be dismissed in accordance with stated procedures, including the right to counsel, the right to confront and cross-examine witnesses, and the right to summons witnesses and documents. Further, under the 1970 Regulations, tenure was automatically conferred upon any faculty member who completed the requisite probationary period of employment. In the case of instructors, the probationary period was seven years. Appellant's July 1972 contract recited that appellant would be subject to the provisions of those Regulations, as they may be amended from time to time. The Preamble to the 1970 Regulations, however, stated that "a faculty member's attainment of tenure shall in all cases be determined by the regulations of the Board in force at the time of his initial appointment."

While there are gaps in the allegations and record, it appears to have been the practice of the parties to execute one-year contracts in each year, through the academic year

1983 through 1984.[1] In 1984, the parties executed a three-year contract for the years 1984 through 1987. Appellant alleges that the 1984–87 contract was the last written contract between the parties, and indeed, it is the last executed contract in the record.

Appellant alleges, and appellees do not dispute, that with the exception of salary adjustments, the annual contracts for the four academic years subsequent to 1972 were identical to the 1972 contract. Further, although appellant is silent on the matter, contracts for the 1980–81 and 1982–83 academic years, each of which were included in the record, also were substantially identical to the 1972 contract. In particular, each of these contracts incorporated the provisions of the Board's Regulations as the same may be amended from time to time.

Appellant taught continuously at MSU from July 1972 through July 1996, with the exception of a two-year educational leave for the purpose of completing her PhD.[2] Appellant held the rank of instructor throughout this time period up until August 20, 1990, when she was appointed assistant professor.

On July 18, 1975, the Board of Trustees adopted Laws Relating to and Governing Policies and Procedures of the Board of Trustees of the State Colleges of Maryland (Policies), which included policies and procedures regarding the standard form of agreement for a faculty contract. The 1975 Policies provided that faculty members could elect to be subject to a new form of faculty contract or continue under the old form, except that the attainment of tenure would be governed by the regulations of the Board of Trustees in force at the time of the initial appointment. Up until 1976, MSU had been an under-

---

1. In particular, the allegations and the record considered together leave gaps for the academic years 1977–78, 1981–82, and 1983–84.

2. Appellant states that her educational leave occurred in 1981 and 1982. The contracts included in the record indicate that her educational leave was for one year in the academic year 1980–81, and one year in the academic year 1984–85. While we note the discrepancy, it has no bearing on the issues before us.

graduate college. In 1976, MSU became a university, and its governance vested in a Board of Regents.

In May 1977, the Board of Regents approved Recommendations Regarding Promotion and Tenure which provided that persons holding the rank of instructor would not be eligible for consideration for tenure—tenure would be reserved for the ranks of assistant professor, associate professor, and professor. The Addendum to the 1970 Regulations, apparently adopted in May, 1977, governed the granting of tenure to all faculty members appointed in September 1970 and thereafter, except for instructors granted tenure prior to May 1977. The Addendum provided: "Faculty members holding the rank of Instructor shall not be considered for or granted tenure. This provision does not apply to Instructors who were awarded tenure before May 1977." Appellant did not attain tenure before May 1977. Appellant does not allege that the 1977 Addendum was not communicated to her when adopted.

The MSU faculty, in August, and again in September, 1978, adopted a Uniform Salary Promotion and Tenure Policy Statement (Faculty Statement). The Faculty Statement provided, in part, for the granting of tenure for instructors and assistant professors appointed prior to the 1977–78 academic year, similar to those contained in the 1970 Regulations. Article 2, § 2 provided "in the case of an instructor, the total number of his annual probationary appointments (including the initial appointment even if less than one year) shall not exceed seven at that institution." Section 6 of that Article provided that "in every case upon completion of the maximum number of probationary appointments, the faculty member shall attain permanent tenure."

On March 28, 1985, the Board of Regents adopted Policies and Procedures on Appointment, Promotion, and Tenure (APT Policy), which were in effect as of the 1994–95 academic year. The APT Policy states in pertinent part that

[p]romotions shall be based on merit and cannot be considered automatic, or simply the result of loyal service to the University for a number of years. Similarly, successive

service shall not confer a right to appointments with tenure. A candidate must instead meet the requirements for the appropriate rank for which he/she is applying and must undergo the appropriate evaluations specified in this document for promotion and/or tenure.

The APT Policy further provides that evaluation of a candidate's application for promotion and/or tenure will be based on three areas of the candidate's work: (1) instructional performance and advising, (2) research, scholarship, and creative activities, and (3) service to the institution and to the community. The APT Policy provides procedures to be followed for review and recommendation of promotion and tenure and provides a right of appeal and appeal procedures when the candidate alleges procedural error or the failure to follow published guidelines. Appellant does not allege that the APT Policy was not communicated to her when it first was adopted in 1985.

Appellant never was expressly granted tenure, although she requested it from time to time. The President of MSU denied appellant's requests for tenure on March 23, 1977, June 2, 1978, and June 4, 1980. In November 1980, the Board of Regents imposed a moratorium on the granting of tenure that remained in effect until March 28, 1985. At that time, the moratorium was lifted, and the Board of Regents approved the APT Policy. Appellant requested recognition of tenure during the moratorium, and the request was denied. Appellant was considered for tenure after her appointment as assistant professor in 1990. In accordance with the procedure provided for in the APT Policy, her request was denied on November 27, 1995.

Appellant filed a complaint for declaratory judgment, injunctive and other relief, and petition for writ of mandamus, in the Circuit Court for Baltimore City, seeking to have her contractual and constitutional rights declared, and a writ of mandamus issued directing MSU to grant her tenure. In addition, appellant filed a separate action for judicial review

and for issuance of a writ of certiorari,[3] challenging the constitutionality of the process she was given with regard to MSU's consideration and ultimate denial of tenure. Appellees filed a motion to dismiss or for summary judgment in the declaratory judgment action, and a motion to dismiss in the action for judicial review. The trial court granted appellees' motion to dismiss the action for judicial review, but gave appellant leave to amend her petition. Thereafter, appellant filed an amended petition for judicial review, appellees filed a motion to dismiss the amended petition, and the two actions were consolidated upon appellant's motion. After a hearing, the trial court granted appellees' motion to dismiss or for summary judgment in the declaratory judgment action. Subsequently, the trial court held a hearing on appellees' motion in the action for judicial review and, in a memorandum opinion, "denied" appellees' petition for judicial review. Simultaneously, the trial court denied appellant's motion to amend or to alter the judgment on the first motion. Appellant then filed this timely appeal.

### Questions Presented

1. Whether material disputes of facts, or inferences therefrom, existed which required denial of Appellee[']s Motion for Summary Judgment?

2. Whether a professor at a public university may acquire a property interest, protected by due process, in continued employment (*de facto* tenure) as a result of the University's action toward her?

3. Whether the Court properly and sufficiently declared the rights of the parties?

### Standard of Review

The trial court denied appellant's petition for judicial review and for a writ of certiorari based upon the principles

---

**3.** While appellant's petition frames her request for relief in terms of both judicial review and certiorari, these concepts are indistinguishable in the context of this case. *See Criminal Injuries Compensation Board v. Gould,* 273 Md. 486, 500–13, 331 A.2d 55 (1975).

set forth in *Criminal Injuries Compensation Board v. Gould,* 273 Md. 486, 331 A.2d 55 (1975). As correctly noted by the trial court, appellant was entitled to relief by way of judicial review if appellees' action violated the standards of procedural due process. While it is undisputed that appellant had no statutory right of appeal,[4] appellate courts have inherent jurisdiction to correct actions by an administrative agency that are arbitrary, capricious, illegal, or unreasonable. *Id.* at 500–01, 331 A.2d 55. Based on its disposition of the declaratory judgment action, the trial court held that the actions of appellees were not arbitrary, capricious, illegal or unreasonable, and denied appellant's request for judicial review. Thus, the propriety of the trial court's denial of appellant's petition for judicial review turns on the propriety of its disposition of the declaratory judgment action.

Appellees framed their motion regarding the declaratory judgment claim as a motion to dismiss or, alternatively, for summary judgment, and attached an affidavit and extensive exhibits in support of their motion. Appellant was given an opportunity to respond in kind, and did respond. The trial court considered the additional documents offered by appellees, along with the statements made in appellant's complaint and response, and the extensive exhibits attached to appellant's complaint. The trial court then treated appellees' motion as a motion for summary judgment in accordance with Rule 2–322(c). *See Hrehorovich v. Harbor Hospital,* 93 Md. App. 772, 781–83, 614 A.2d 1021 (1992), *cert. denied,* 330 Md. 319, 624 A.2d 490 (1993).

■ Rule 2–501(e) directs the trial court to grant summary judgment in favor of the movant "if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Under the summary judgment rule, a trial court does not resolve disputed issues of

---

4. MSU is a State agency and is exempt from the Administrative Procedure Act. *See* Md.Code Ann., Education, § 14–104(b) (1992 Repl.Vol. Supp.1995).

fact, but instead, makes rulings as a matter of law. *Southland Corp. v. Griffith,* 332 Md. 704, 712, 633 A.2d 84 (1993); *Beatty v. Trailmaster Prods., Inc.,* 330 Md. 726, 737, 625 A.2d 1005 (1993). Thus, the standard for appellate review of a grant of summary judgment is whether the trial court was legally correct. *Griffith,* 332 Md. at 712, 633 A.2d 84; *Beatty,* 330 Md. at 737, 625 A.2d 1005.

## Discussion

Appellant argues that she acquired tenure pursuant to the 1970 Regulations when she completed her seventh probationary period of employment on June 10, 1979. Alternatively, appellant argues that she obtained *de facto* tenure, or at least a property interest in continued employment, due to MSU's course of conduct. Appellant argues that there were sufficient disputes of material facts that supported her theories to prevent the entry of summary judgment. Finally, appellant argues that the trial court erred in failing to declare all of the rights of the parties. We understand appellant's last argument to be two-fold. She asserts, first, that the trial court, in rendering its decision, disregarded certain facts. Second, appellant asserts that the trial court limited its decision to a determination of whether she had attained tenure, and failed to address her alternative argument that, regardless of whether she had attained tenure, she possessed certain due process rights that were violated by appellees.

### A.

### Attainment of Tenure in 1979

The Regulations adopted in 1970 by the Board of Trustees provided, in pertinent part, that,

[i]n every case, upon completion of the maximum number of probationary appointments, the faculty member shall attain permanent tenure. The Board may, in exceptional cases decrease the length of the probationary period or, with the consent of the faculty member concerned, increase the length of the probationary period.

Between 1972 and 1990, appellant was an instructor. Under the 1970 Regulations, the maximum number of annual probationary appointments for an instructor was seven. Appellant asserts that she automatically attained tenure when she completed her seventh annual probationary appointment on June 10, 1979. She relies on the one-year contract signed in July 1972, which incorporated the 1970 Regulations by reference, and the preamble to the 1970 Regulations. The preamble provided that, although the regulations may be amended from time to time, attainment of tenure shall be governed by the regulations of the Board in force at the time of the initial appointment. Appellant contends that "[t]he tenure attained by [her] was created by statute, defined by custom and usage in the academic community, [and] extended to her by contract and appointment. . . ."

The problem with appellant's argument is that, in 1977, the Board enacted an Addendum to the 1970 Regulations, governing the granting of tenure to all faculty members appointed in September 1970 and thereafter, which provided that faculty members holding the rank of instructor shall not be considered for or granted tenure. The Addendum avoided a retroactive result by excluding all instructors who had attained tenure prior to May, 1977. Appellant had not attained tenure by May, 1977, and was not due to attain tenure until June 10, 1979. Thus, under the regulations then in effect, appellant did not automatically attain tenure in June, 1979.

■ Neither did appellant attain tenure in 1979 by virtue of a contract with MSU. In her complaint for declaratory judgment, appellant alleged that, on May 31, 1978, she executed a one-year contract for the school year beginning August 9, 1978 and ending June 10, 1979. Appellant does not allege, as she must, that the 1978–79 contract incorporated the pre-Addendum regulations. Indeed, although the 1978–79 contract has not been included in the record, perhaps conveniently, the one-year contracts that have been included (1972–73, 1980–81, 1982–83) all incorporate by reference the current Regulations and Procedures Governing Academic Freedom and Tenure. The only reasonable inference that can be drawn from this

record is that the 1978–79 contract similarly incorporated the regulations then in effect, *i.e.*, the version containing the 1977 Addendum. The 1978–79 contract superseded any prior contracts, express or implied, between appellant and MSU, including the provision that the regulations regarding tenure in effect at the time of appellant's initial hire would govern. By executing the 1978–79 contract, appellant agreed to be bound by its terms. Thus, in order to establish a factual dispute sufficient to support her alleged contract claim, it was incumbent upon appellant to demonstrate, or, at the very least, allege, that express terms of the 1978–79 contract bound MSU to its pre-Addendum policies.[5] Appellant does not make such an allegation, and indeed, does not allege that the 1977 Addendum was not communicated to her when it first was adopted.[6]

Appellant argues that the 1978 Faculty Statement, which provided that the pre-Addendum policies shall apply to faculty appointed prior to the 1977–78 contractual year, was adopted by MSU and that the faculty was notified of the adoption on October 9, 1978. Consequently, according to appellant, there is a factual dispute as to whether the tenure policy in existence at the time of appellant's appointment, permitting persons holding the rank of instructor to attain tenure, governed appellant's eligibility, or whether later policies, removing persons holding the rank of instructor from eligibility for tenure, govern. We disagree that there was evidence that MSU adopted the pre–1977 tenure policies set forth in the Faculty Statement. The October 9, 1978 letter to the faculty from the Chairperson of the Board for Salary, Promotion, and Tenure informed the faculty that MSU had adopted only portions of

---

5. Moreover, appellant alleges that she continued to sign one-year contracts after June 1979. This indicates that, despite her later protestations to the contrary, appellant acknowledged that she had not attained tenure in June 1979.

6. The record indicates that it was widely distributed to and discussed by the faculty sometime prior to August 1979 as it, in part, was the subject of the Faculty Statement adopted by the faculty on August 18 and September 14, 1978.

the Faculty Statement, and *not* the portion regarding the pre-1977 tenure policies.

Further, appellant notes that, upon reviewing her case in 1995, the MSU Appeals Committee concluded that the information regarding appellant's tenure status was conflicting in that appellant had not been given a letter of termination in 1979 "pursuant to the denials of tenure in 1977, 1978 and prior to 1979." Appellant argues that this fact is sufficient to defeat summary judgment. We disagree. Neither the policies then in effect nor any subsequently adopted policies require MSU to terminate instructors after a certain period of employment. Rather, instructors may be employed for an indefinite number of one-year terms. It was not until appellant was made an assistant professor in 1990 that the termination clock began to run. Pursuant to the 1985 APT Policy, appellant was given a second three-year term in 1993. Prior to appellant's completion of her fifth year as an assistant professor, appellees were required to notify appellant in writing

> of the University's decision to tenure, terminate, or when deemed to be in the best interest of the University to offer an additional year (seventh year) to meet the criteria for tenure.

Pursuant to this procedure, appellant was notified on June 20, 1995 and November 27, 1995 that she was being terminated effective the end of the 1995–96 academic year. Accordingly, the trial court was correct in determining that there were no material disputes of fact that would support appellant's claim that she had attained tenure by June 10, 1979.

## B.

### *De Facto* Tenure

Relying primarily upon her allegation that the parties' last written contract expired in 1987, appellant also asserts that she obtained *de facto* tenure. Appellant asserts that the practice of MSU from 1984 to the present has been not to require execution of annual faculty contracts with persons who have attained tenure. By contrast, appellees assert that there

is no link between tenure status and whether a faculty member has entered into an annual written contract. In addition, appellant argues that a factual dispute regarding whether she was tenured was created by the fact that she was recommended for tenure by her department during the moratorium, and immediately following it being lifted; that she served as Department Chair for a period of time; and a statement made by the president of MSU during a legislative hearing in 1991, admitting that appellant had tenure. Appellant contends that the trial court ignored all of these facts in rendering its decision. We disagree.

While the trial court did not expressly address each of the facts upon which appellant now relies to defeat summary judgment, it is apparent from our review of the record that the trial court carefully considered all of the facts presented to it regarding the conduct of and course of dealings between the parties. We agree with the trial court that the facts cited by appellant do not support an inference that appellant had a reasonable expectation of tenure or continued employment. Appellant claims that the fact that she was appointed Department Chair created a fact issue regarding whether she had a reasonable belief in continued employment, yet, in a letter from appellant to MSU's President, dated August 1, 1983, appellant indicated that she had decided to no longer continue as acting chairperson because of MSU's failure to grant her tenure. Thus, her appointment as Department Chair did not create even a subjective belief that she was tenured. Appellant was informed in 1977, 1978, and 1980 that she was not eligible for tenure. Further, on January 17, 1984, MSU denied appellant's request for recognition of tenure retroactive to the 1978–79 school year and informed appellant that tenure can only be officially granted by the Board of Regents. After such notification, and in view of MSU's written policies and procedures regarding tenure, MSU's inaction or silence in later years could not have created in appellant a reasonable expectation of continued employment. Neither could any statements made by an MSU official not authorized to grant tenure have been binding upon MSU. In short, we agree with

the trial court that "[t]hrough a continuous course of conduct the University has maintained to Dr. Marriott in the most unequivocal of terms that it did not grant tenure to her."

Moreover, our holding in this case is compelled by our recent decision in *The Johns Hopkins University v. Ritter*, 114 Md.App. 77, 689 A.2d 91 (1996). In *Ritter*, we accepted the prevailing rule "that, when a tenure process is established in writing and is communicated to a prospective appointee, a subordinate official may not circumvent that process and bind the college to a tenure arrangement." 114 Md.App. at 97, 689 A.2d 91. Thus, in that case, we held that promises of tenure made to two doctors by Hopkins's Director of the Department of Pediatrics were not enforceable in the absence of evidence that the director had either actual or apparent authority to circumvent Hopkins' written policies regarding tenure. In so holding, we reviewed and rejected some of the foreign cases upon which appellant now relies in support of her *de facto* tenure argument. *Id.* at 97–98, 689 A.2d 91. In particular, we rejected the reasoning of *Soni v. Board of Trustees of University of Tennessee*, 513 F.2d 347 (6th Cir.1975), *cert. denied*, 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976), which, we recognized, is the closest that any court has come to recognizing a form of *de facto* tenure in the face of an explicit tenure system. Further, while we did not discuss *Steinberg v. Elkins*, 470 F.Supp. 1024, 1029 (D.Md.1979), a case upon which appellant now relies, our opinion in *Ritter* is a clear rejection of the holding in *Steinberg*.

Similarly, we hold that, upon the facts of this case, appellant does not have a claim for *de facto* tenure. Unlike *Perry v. Sindermann*, 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972), this is not a case in which the university has no formal, written policy regarding tenure. We agree with the courts that have distinguished *Perry* on this oasis alone. *See, e.g., Edinger v. Board of Regents of Morehead State University*, 906 F.2d 1136, 1140 (6th Cir.1990); *Sabet v. Eastern Virginia Medical Authority*, 775 F.2d 1266, 1269–70 (4th Cir.1985); *Haimowitz v. University of Nevada*, 579 F.2d

526, 528 (9th Cir.1978). We further agree with the court in *Haimowitz* that "the existence of a formal code governing the granting of tenure precludes a reasonable expectation of continued employment absent extraordinary circumstances." 579 F.2d at 528. *See also Sabet,* 775 F.2d at 1270 (noting that "[i]t is unlikely in the extreme that an institution which has a formal tenure policy stated with precision in writing in a generally circulated and available faculty handbook has also developed an altogether inconsistent informal policy"). In any event, appellant does not even allege that an informal tenure policy coexisted with appellees' formal, written policy. She does not indicate any other individual who arguably has attained tenure in circumvention of MSU's written policy. Further, the doctrine of estoppel ordinarily does not apply against the State, or its agencies, with respect to performance of its governmental functions. *ARA Health v. Dep't of Public Safety,* 344 Md. 85, 96, 685 A.2d 435 (1996); *Salisbury Beauty Schools v. State Board,* 268 Md. 32, 63–64, 300 A.2d 367 (1973). Neither is this a case in which appellant has alleged that she was terminated for discriminatory or otherwise wrongful reasons. *See Perry,* 408 U.S. at 594–95, 92 S.Ct. at 2696 (plaintiff alleged that he was terminated for exercising his First Amendment right of free speech); *Board of Regents v. Roth,* 408 U.S. 564, 568, 92 S.Ct. 2701, 2704, 33 L.Ed.2d 548 (1972) (same). For all of these reasons, the trial court was correct in granting summary judgment on appellant's claims of *de facto* tenure.

Given our disposition of this issue, we need not consider appellees' argument that appellant's *de facto* tenure claim is unenforceable against appellees by virtue of Md.Code Ann., State Govt., § 12–201 (waiving sovereign immunity in contract actions based upon a written contract).[7]

---

7. This argument was not raised below. While immunity may be raised for the first time on appeal, *Dept. of Public Safety v. ARA,* 107 Md.App. 445, 460, 668 A.2d 960 (1995), *aff'd,* 344 Md. 85, 685 A.2d 435 (1996), we need not consider the argument in view of our other holdings.

# C.

## Due Process

Appellant argues that, prior to termination, she was entitled to an opportunity to have counsel represent her in the appeals process, the opportunity to see, hear, and cross-examine witnesses against her, and the right to compel witnesses to attend and give testimony on her behalf. She further raises, as a point of technical error, an assertion that the trial court failed to consider her due process arguments. As we explain below, by declaring that appellant had no contractual right of tenure, either express or implied, the trial court necessarily decided that appellant had no right to receive any process prior to termination other than the process she had been given.

■ At the time that appellant was terminated, she was not a tenured faculty member. At most, appellant was an employee for a specified term that ran between 1993 and 1996.[8] Accordingly, appellant had no protected property interest in the expectation of continued employment beyond 1996.[9] As stated by the Supreme Court,

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . . Property interests, of course, are not created by the Constitution. Rather, they are created and their dimen-

---

**8.** While there is no evidence in the record that the parties ever entered into a three-year written contract for the years from 1993 until 1996, the APT Policy arguably created an implied contract between the parties for those years. Specifically, the APT Policy provided that assistant professors would be considered for tenure either prior to the end of a three-year term of employment or prior to the end of a second three-year term of employment. Appellant was promoted to assistant professor in 1990, and was neither considered for tenure nor terminated prior to 1993. Thus, under the APT Policy, appellant was entitled to be employed for an additional three-year term between 1993 and 1996, and to be considered for tenure prior to the end of that term.

**9.** Indeed, appellant's counsel conceded at oral argument that the property interest was grounded in contract.

sions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. *See also Geddes v. Northwest Missouri State University,* 49 F.3d 426, 429 (8th Cir.1995); *Edinger,* 906 F.2d at 1136; *Sabet,* 775 F.2d at 1269; *Haimowitz,* 579 F.2d at 527–28. The only process to which appellant was entitled was the procedure for consideration of tenure set forth in the 1985 APT Policy. *See Siu v. Johnson,* 748 F.2d 238, 244–45 (4th Cir.1984). It is undisputed that appellant received this process.

JUDGMENT AFFIRMED; APPELLANT TO PAY COSTS.